**GAIL BATTISTE and LORNE BATTISTE, Plaintiffs**

**v.**

**ST. THOMAS DIVING CLUB, INC., d/b/a VILLA OLGA RESTAURANT, Defendants**

Civil No. 78-212

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 10, 1979

JOHN W. NEWMAN, ESQ., St. Thomas, V.I., *for plaintiffs*

JOHN R. MAYER, ESQ. (GRUNERT, STOUT, HYMES, MAYER & SMOCK), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

This case is before the Court on several motions by the parties which ultimately boil down to one underlying issue: what legal standard governs the applicability of the implied warranty provisions of the Uniform Commercial Code, 11A V.I.C. §§ 2—314, 2—315, to ciguatera fish poisoning? Plaintiffs, Gail and Lorne Battiste, have brought suit for damages allegedly resulting from ciguatera fish poisoning contracted by Gail Battiste after she consumed a fish dinner served by defendant, Villa Olga Restaurant. In its answer, in addition to an assumption of risk defense, defendant pleads two additional defenses: (1) failure of plaintiffs to state a claim upon which relief can be granted and (2) inapplicability of the implied warranty statutes relied on by plaintiffs to ciguatera fish poisoning.

Three subsequent motions are now being entertained by the Court. Firstly, plaintiffs move to strike the two additional defenses pleaded by defendant as being legally

185

insufficient. Fed. R. Civ. P. 12(f). Defendant counters, albeit without supporting affidavits or documents, by moving for summary judgment. Fed. R. Civ. P. 56. Finally, plaintiffs submit a reply labeled a cross-motion for summary judgment although its only true import is an argument that since genuine issues of fact remain, summary judgment should not be granted. The motion to strike will be granted. The motions for summary judgment will be denied.

The two defenses plaintiffs seek to have stricken may be consolidated into one central proposition since the defense of failure to state a claim is merely a generalized version of the second defense that the implied warranty statutes cited by plaintiff are inapplicable to fish poisoning. Defendant's theory in the two defenses, as well as in its motion for summary judgment, is that because ciguatera fish poisoning is a natural, latent condition in fish, the seller cannot be held liable under the implied warranties in §§ 2—314 and 2—315. Thus, plaintiffs' motion to strike presupposes that even if the fish poisoning is a natural, latent condition, defendant still cannot succeed on its defense of failure to state a claim. Accordingly, in order to decide the motion to strike, the Court must resolve whether the natural and latent qualities of a condition in food is a defense to an implied warranty action.

Two distinct lines of authority exist for dealing with injuries suffered from a substance in food consumed in a restaurant, the "foreign-natural" test and the "reasonable expectations" test. Both theories are ordinarily applied to objects found in food such as pieces of bone or shell. They are, however, equally applicable to the fish poisoning situation since it also involves the existence in food of a substance which may prove deleterious to the health of the consumer. Defendant favors the "foreign-natural" test under which a buyer is barred from recovery as a matter of

law where the substance in the food which causes the injury was "natural" to the food served. On the other hand, if the object was "foreign" to the food, then there may be a recovery. See e.g. Mix v. Ingersoll Candy Co., 59 P.2d 144 (Cal. 1936). The rationale of the "foreign-natural" test is that "substances which are a natural part of the food served are not considered foreign matter or substances if inadvertently left therein. On this premise it is reasoned that the presence of substances natural to the ingredients or finished product does not constitute breach of the vendor's implied warranty that the food is wholesome and fit for human consumption." Musso v. Picadilly Cafeterias, Inc., 1978 So.2d 421, 426 (La. App. 1965).

Plaintiff, on the other hand, advocates the "reasonable expectations" test which holds that it is a question for the trier of fact whether a buyer could reasonably expect to find the substance in the food consumed. See e.g. Bethelia v. Cape Cod Corp., 103 N.W.2d 64 (Wis. 1960). The "reasonable expectations" test has several advantages over the "foreign-natural" test. Firstly, it avoids certain weaknesses in the logical underpinning of the "foreign-natural" test. For example, the "foreign-natural" test is based on the assumption that what is natural is necessarily expected and, therefore, an injury from a natural substance in food cannot result in liability. See Mix, supra at 48. If that is true, however, then it is clearly more logical to present the ultimate issue, the reasonable expectations of the plaintiff, directly before the trier of fact. In effect, "(t)he naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served." Zabner v. Howard Johnson's Inc., 201 So.2d 824, 826 (Fla. App. 1967). Furthermore, naturalness alone is not the appropriate criterion for determining danger to the con-

sumer since extensive damage or death can be caused by a substance in prepared food that is "natural" to the food item in its original state. O'Dell v. DeJeans' Packing Co., 24 U.C.C. Rptr. 311, 314 (Okla. Ct. App. 1978).

There exists, however, a stronger, positive rationale for preferring the "reasonable expectation" test: the fact that the "reasonable expectation" test is considerably more consistent with Restatement (Second) of Torts § 402A (1965) which, in the absence of controlling local law, is the law in the Virgin Islands. 1 V.I.C. § 4:

Section 402A makes the seller liable for injuries caused by defective or unreasonably dangerous products. "Defective condition" is defined in Comment (g) as ". . . a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." An article is "unreasonably dangerous" according to Comment (i) if it is ". . . dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

Mathews v. Campbell Soup Co., 380 F.Supp. 1061, 1065 (S.D. Tex. 1974). Thus, by following the "reasonable expectation" test the Court should reach a result consistent in every case with the Restatement definitions of "defective condition" and "unreasonably dangerous." This would not necessarily be true under the "foreign-natural" doctrine. "It would be possible under that approach only if it is assumed that consumers *always* contemplate the presence of every species of object which might be categorized as natural to the food they are eating regardless of how infrequently the object might appear in common experience." Id. That assumption is obviously untenable.

Before concluding, the Court must address two contentions of defendant. First, defendant argues that ciguatera fish poisoning is undetectable and, therefore, local fish are incapable of being made safe for their intended and ordi-

nary use. Thus, defendant maintains, the fish are "unavoidably unsafe products" under comment k to § 402A and cannot be considered "defective" or "unreasonably dangerous" within the terms of § 402A and do not fail to fit within the warranties provided for in Uniform Commercial Code §§ 2—314 and 2—315. Such an argument has been accepted by some Courts concerned with an individual who contracted hepatitis as a result of being given a transfusion of impure blood, where the evidence showed that there were no methods available at the time in question by which hepatitis virus could effectively be excluded from blood or the presence of the virus determined. See e.g. McMichael v. American Red Cross, 18 UCC Rptr. 281, 283 (Ky. Ct. App. 1975). Yet the analysis for blood cases does not apply to fish poisoning. First, comment k is addressed primarily to drugs and vaccines where the resulting social benefits justify utilizing the product notwithstanding a medically recognized risk. Moreover, there frequently is no alternative to the prescribed drug or needed transfusion. The ordering of local fish in a restaurant hardly involves similar social benefits or lack of choice. More importantly, even for the "unavoidably unsafe products" defined in comment k, the Restatement still requires that the product be "properly prepared, and accompanied by proper directions and *warning*." (Emphasis added.)

This discussion leads the Court to the public policy arguments raised by defendant. Certainly, the continued serving of local fish by Virgin Islands restaurants is a desirable economic and gustatory goal. Unfortunately, the Court cannot ignore the competing concern that patrons of our restaurants should be afforded notice of the risks inherent in the consumption of local delicacies. The alternative is that the restaurants which, however small, are in the better position to spread the risk, must bear that risk. Perhaps the most facile solution would be for menus to

contain a warning about the possibility of fish poisoning. This is not a particularly appetizing suggestion, but it would solve the problem of notice at little cost to the restaurant. It can hardly be argued that such a warning would substantially injure the local fish industry since it is a fair statement that many restaurant patrons today order local fish despite their awareness of the danger of fish poisoning. The warning would simply insure that all patrons have the benefit of such knowledge.

In conclusion, the Court now holds that the better reasoned view is the "reasonable expectations" test.[1] Thus, plaintiffs' motion to strike will succeed since the alleged natural, latent quality of ciguatera fish poisoning is an insufficient defense. In addition, even assuming that there is no genuine issue of fact as to whether ciguatera fish poisoning is a natural, latent condition, since the Court adopts the "reasonable expectations" test, defendant's motion for summary judgment must fail. Finally, if plaintiffs' reply is given the benefit of the doubt and is characterized as a motion for summary judgment, it too must be denied since there remain factual questions as to whether plaintiffs did in fact eat at Villa Olga Restaurant, whether Gail Battiste contracted ciguatera fish poisoning, and whether Gail Battiste "reasonably expected" ciguatera fish poisoning might infect the fish she consumed.

---

[1] In Bronson v. Club Comanche, 6 V.I.C. 683 (D.V.I. 1968) this court dealt with a case involving ciguatera fish poisoning. In Bronson, the Court held that a restaurant keeper impliedly warrants that "the food he serves his customers is wholesome, contains no deleterious substances and is fit for human consumption." Id. at 687. In addition, the Court held that the implied warranty imposes strict liability despite the restaurateur's inability to discover the unwholesome nature of the food. Finally, the Court held that assumption of risk is a good defense to an action for breach of warranty. Id. at 688. Although, in the case at bar, the Court's analysis of the issue is slightly different, the underlying law is modified only to the extent that the assumption of risk defense is effectively incorporated into an element of plaintiff's claim.

## ORDER

The premises considered and the Court being advised,

IT IS ORDERED that plaintiffs' motion to strike be, and the same is hereby, GRANTED;

IT IS FURTHER ORDERED that the motions of both plaintiffs and defendant for summary judgment be, and the same are hereby, DENIED.