## SARAH VIGER, MARCELINE STEELE, AROL STEELE, PATRICIA L. STEELE, NORMA WARBINGTON, ANDREW CHARLES WARBINGTON, JOSE MARTINEZ, ERIC FRANK and ROSITA FRANK, Plaintiffs

v.

## COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Defendant

Civil No. 1979/204

District Court of the Virgin Islands

Div. of St. Croix

February 16, 1982

DEREK M. HODGE, ESQ. and JEFFREY L. RESNICK, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

DAVID O'BRIEN, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. For the reasons set forth below, the motion will be granted.

### FACTS

The case arises out of four separate actions by plaintiffs against the St. Croix Fisherman's Cooperative, Inc. d/b/a The Fish Shop (hereinafter "The Fish Shop"). Between November 24, 1976, and April 11, 1977, plaintiffs sued The Fish Shop for injuries sustained from consumption of fish purchased at the store.[1] The fish was contaminated with ciguatera poisoning.[2]

Defendant, The Fish Shop, answered in each case[3] except in Warbington, et al. v. St. Croix Fisherman's Corp., Inc., Civil No. 58/1977. A default was entered in that matter.[4] The cases were consolidated by court order on April 30, 1979, and a consent judgment for $97,500.00 was entered in favor of plaintiffs.[5] The Fish Shop's insurance coverage at all times pertinent hereto, was carried by Commercial Insurance Company, defendant in this action. After entry of judgment all rights under that policy of insurance were assigned to plaintiffs. In assertion of their rights, plaintiffs filed suit against defendant. Commercial Insurance Company denied coverage at the time the original suits were filed, and continues to deny coverage. The company claims that this policy was issued to cover injuries resulting from use of the premises, and injuries off the premises arising from hazards of products sold were not contem-

---

[1] Plaintiffs' Exhibits 1, 2, 3 and 4.

[2] It is not possible to detect whether or not fish are contaminated with ciguatera poisoning without a laboratory inspection.

[3] Plaintiffs' Exhibit 5, 6 and 7.

[4] Plaintiffs' Exhibit 8.

[5] Plaintiffs' Exhibit 9.

plated. The company alleges exclusion "p" of the policy, as defined by the terms on the jacket, is evidence of this fact. The insurance company was given notice of the complaints filed against the insured. There is no question as to the timeliness or adequacy of this notice. The sole issue before the Court is what effect the exclusions listed in the insurance policy have on the injuries here complained of.

## DISCUSSION

The basic coverage in this case is defined by paragraph 1 of the policy:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> A. bodily injury or
> B. property damage
> to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incident thereto. . . .

The insured was in the business of selling fresh fish to the general public. The use to which the building was put, and from which the injuries sustained arose, is an operation necessary or incidental to "ownership, maintenance or use of the insured premises."

■■ The law recognizes that there is incumbent upon a manufacturer or supplier of goods a duty to warn a consumer of a known or reasonably foreseeable danger or defect. LaBelle v. McCauley Ind. Corp., 649 F.2d 46, 49 (1st Cir. 1981). Section 388 of the Restatement (Second) of Torts defines this area of the law.[6] "[A] supplier of a chattel has no duty under § 388 to test or inspect or even make a cursory examination to ascertain the existence or nonexistence of a dangerous condition. Section 388 requires only that the

---

[6] Section 388 Restatement (Second) of Torts provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

supplier warn of those dangers of which he is actually aware or *has information which should make him aware that such a dangerous condition exists.*" Lockett v. General Electric Co., 376 F.Supp. 1201, 1208 (E.D. Pa. 1974) affd. 511 F.2d 1393 (3d Cir. 1975) (emphasis added); see Moran v. Faberge, Inc., 332 A.2d 11, 15–17 (Md. 1975) (extended discussion of duty to warn).[7] This Court in Battiste v. St. Thomas Diving Club, Inc., 15 V.I. 184 (D.V.I. 1979) spoke to the question of warning.

> Certainly, the continued serving of local fish by Virgin Islands restaurants is a desirable economic and gustatory goal. Unfortunately, the Court cannot ignore the competing concern that patrons of our restaurants should be afforded notice of the risks inherent in the consumption of local delicacies. The alternative is that the restaurants which, however small, are in the better position to spread the risk, must bear that risk. Perhaps the most facile solution would be for menus to contain a warning about the possibility of fish poisoning. This is not a particularly appetizing suggestion, but it would solve the problem of notice at little cost to the restaurant. It can hardly be argued that such a warning would substantially injure the local fish industry since it is a fair statement that many restaurant patrons today order local fish despite their awareness of the danger of fish poisoning. The warning would simply insure that all patrons have the benefit of such knowledge.

Id. at 189–190.

The manner of and time at which the warning must be given will vary according to the product and its use. There can be no dispute here about the adequacy of the warning, since none was given. The duty arose in this case at the time the fish was sold. Ciguatera poisoning is a known danger accompanying the consumption of fresh fish caught in and around the Virgin Islands.[8] The Fish Shop breached that duty by its failure to warn plaintiffs. That breach

---

[7] Nothing in Judge Maris' opinion in Bronson v. Club Comanche, Inc., 6 V.I. 683, 286 F.Supp. 21 (D.V.I. 1968) would indicate a different result from that reached here. That case, also involving ciguatera poisoning, was brought under an implied warranty, strict liability theory. The jury found that the plaintiff "assumed the risk" or "ceas[ed] to place any reliance on the implied warranty." Id. at 23. That issue was not raised before, nor is it presented here.

[8] That plaintiffs may have known of the hazard does not obviate the need for a warning. Additionally, the time to litigate the issue has passed.

occurred on the premises.[9] The conditions of coverage in paragraph 1 of the policy have, therefore, been fulfilled.

The exclusion asserted by the insurance company in order to avoid liability does not apply to this case. The "completed operations hazard" and "products hazard" both exclude coverage if the bodily injury or property damage occurs away from the insured premises. A cursory reading of these sections might suggest nonliability on the part of the company. Upon closer examination, however, the analysis utilized requires a result different from that advanced by the insuring company. The duty owed to the plaintiffs and the breach of that duty both took place on the insured premises. The injuries are not then within that class of cases excluded by the defined provision of the policy.

■ The Court is called upon here to interpret the language of this policy. The actual words used, as well as the manner of presentation may be categorized as confusing and unclear.[10] Exclusion "p" states that insurance does not apply to injury on damage "within the completed operations hazard or the products hazard." The modifying language, defining those terms, however, is contained in the jacket to the policy. In making a determination the Court is guided by the rule that language of a contract will be strictly construed against the insurer, in keeping with the maxim "contra proferentem." 1 G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 15:73 at 776 (2d ed. 1959 & Supp. 1980) (cases cited therein). "When the terms of an insurance contract are open to two or more reasonable constructions, that construction most favorable to the insured should be adopted." Roby v. Connecticut Gen. Life Ins. Co, 349 A.2d 838, 842 (Conn. 1974). See St. Paul Fire & Mar. Ins. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981). When the insured accepted this contract it would have been a reasonable belief on his part, after reading the policy, to conclude that he would be covered in a situation such as exists here. Any doubt in that regard should, and will be, resolved in his favor.

■ The Court finds that the case presents no genuine issue of material fact to be decided. Fed. R. Civ. P. Rule 56. Resolution is

---

[9] This is not analogous to a conflicts of law case where the breach of duty arises in State A but the injury occurs in State B. There, the law of the place of the injury will normally prevail.

[10] There can be no clearer evidence of this fact than the testimony of defendant's own expert witness, Professor C. Arthur Jaffe, who said "I can't say what others might think . . . The average contract is not understandable."

dependent solely on the question of coverage by the insurance carrier. Having determined that defendant Commercial Insurance Company is liable, under the contract of insurance with The Fish Shop for the damages which plaintiffs here assert, the Motion for Summary Judgment is accordingly GRANTED.

## ORDER

In accordance with the Memorandum Opinion entered on even date herewith, plaintiffs' Motion for Summary Judgment is GRANTED, and it is hereby

ORDERED, ADJUDGED and DECREED that plaintiffs have judgment against defendant in the sum of $97,500.00 together with costs of this action including attorneys' fees which shall be assessed upon submission of the appropriate affidavits in accordance with the guidelines of Estien v. Christian, 11 V.I. 464 (3d Cir. 1975).