**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**ROBERTO SMALLS, Defendant**

Criminal No. F12/1994

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 27,1995

JOHN W. DAVIS, II, ESQ., DAVID BASS, ESQ., (Assistant Attorneys General), Virgin Islands Department of Justice, St. Thomas, U.S.V.I., *for plaintiff*

VICTOR SCHNEIDER, ESQ., GWENDOLYN WILDS, ESQ., (Assistant Public Defenders), Office of the Territorial Public Defender, St. Thomas, U.S.V.I., *for defendant*

HODGE, *Presiding Judge*

## OPINION I

This matter is before the court on the Defendant's Motion for Judgment of Acquittal as to Counts I and II pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The Government opposes the motion.

The question presented on the Rule 29 motion is whether there is substantial evidence from which the jury could find guilt beyond a reasonable doubt, and the question presented on the Rule 33

motion is whether the verdict is contrary to the weight of the evidence and a miscarriage of justice may have resulted. For the reasons stated herein, the court concludes that there is substantial evidence to support the finding of guilt beyond a reasonable doubt, and that the verdict is not contrary to the weight of the evidence. Thus, the Motion for Judgment of Acquittal and the alternative Motion for a New Trial will be denied as to Counts I and II.

## I.

The Defendant was arrested and charged with Murder in the First Degree in violation of 14 V.I.C. § 921 and 922(a)(1) [Count I]; Assault in the First Degree in violation of 14 V.I.C. § 295(1) [Count II]; and Unauthorized Possession of a Firearm in violation of 14 V.I.C. § 2253(a) [Count III]. On September 12, 1994, a jury was impanelled and trial commenced. Following the presentation of the Government's case, the Defendant moved for judgment of acquittal on all counts of the complaint pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Government opposed the Defendant's motion. The court denied the Defendant's motion as to Counts I and II, but granted it as to Count III. The basis for the court's dismissal of Count III is addressed in a separate Memorandum and Order filed herewith. At the conclusion of all the evidence, the Defendant's Rule 29 Motion as to Counts I and II was again denied. After deliberation, the jury found the Defendant "Guilty" of Counts I and II. The Defendant timely filed the present motion in accordance with FED. R. CRIM. P. 29 and 33.

## II.

Both parties failed to state specific facts supporting their contentions. Thus, the Court looked to the record for specificity. The record shows that the following evidence was offered by the parties:

On the evening of January 8, 1994, the Defendant attended a "Calabash Jam" at the First Class Night Club located on the second floor of the Wendy's Building in the area of Mandela Circle on St. Thomas, Virgin Islands. At some time during the party at the First

159

Class Night Club, the Defendant threatened John Weekes and two other individuals. In the early morning hours of January 9, 1994 after the party ended, one of four off-duty police officers who were moonlighting as security guards for the First Class Night Club saw the Defendant walk to a vehicle parked in the Wendy's parking lot, obtain what appeared to be a firearm from the occupant of the vehicle, cock it, and hold it by his side as he walked towards the parking lot exit. The officer then shouted to the other officers that the Defendant had a gun and they all hurried down the balcony steps hoping to intercept the Defendant. However, before they could reach him, the Defendant, as he reached the parking lot exit, began shooting at several occupants in the back of a truck that was heading north. The officers then shot at the Defendant in order to stop his assault. Following a chase by the officers into the nearby Paul M. Pearson Housing Complex, the Defendant was wounded and subsequently arrested.

Several exhibits were admitted into evidence showing the scene of the shooting, the various buildings, and the location of the individuals involved in the incident. In addition, numerous eye-witnesses described in detail how they saw the Defendant shoot at the victims, and one police officer demonstrated exactly how the Defendant approached the truck, aimed the weapon, started shooting at the occupants, paused to walk by an electrical pole, and continued shooting until the officers started shooting at him.

One of the truck passengers was fatally shot and another was seriously wounded. There was expert testimony that the cause of death of the deceased was a fatal gun shot to the head, and that the other victim suffered from a bullet wound to the buttocks. There was further expert testimony from the F.B.I. establishing that the bullets retrieved from both victims were shot from the firearm identified as the murder weapon, which was retrieved several months later from the general area where the chase had occurred.

The Defendant took the stand and claimed self defense. Although he denied that he possessed the gun identified as the murder weapon, the Defendant admitted that he shot a firearm at the occupants of the truck, but contended that he did so only after he was first shot at by them. The Defendant also testified that he did not know it was the police who were firing at him and that he

therefore ran into an apartment and asked the male occupant to call the police. The Defendant's testimony was contradicted by his own expert witness who testified that based upon the position of certain bullet holes at the crime scene there could not have been any gunshots fired from the truck's position, and by the male occupant who, though called as the Defendant's witness, denied that the Defendant asked him to call the police. The government witnesses also testified that the Defendant did not shoot in self-defense, and that his action was premeditated, wilful, and deliberate.

### III.

The Defendant argues that the court erred in denying his Rule 29 motion at the close of the Government's case and at the close of all the evidence with respect to Counts I and II. The Defendant's arguments are confusing and disjointed.[1] For example, in contending that the court erred in denying the Defendant's Motion for Judgment of Acquittal at the close of the Government's case, the Defendant's counsel attacks the prosecution's cross-examination of the Defendant. Since the Defendant did not testify during the Government's case in chief, his cross-examination had nothing to do with the motion at the close of the Government's case. However, the court attempts to decipher and address the various issues raised in the Defendant 's motion.

■ The standard for deciding a motion for judgment of acquittal is the same whether the motion is made at the close of the Government's evidence or after the discharge of the jury. 2 Charles Wright, Federal Practice and Procedure Section 467 at 655 (1982). In considering the Defendant's motion for judgment of acquittal, the court must determine whether there was substantial evidence from

---

[1] The court is also troubled by the misrepresentations of the trial record contained in the Defendant's motion. Among other things, the Defendant's counsel has misstated the curative measures taken by this court throughout the proceedings. Defendant's counsel is cautioned to uphold the ethical and legal duty of office to be forthcoming and precise with this court and the appellate courts. See *Doralph B. Rabess v. Government*, No. 92-40 at 2, footnote 1 (D.C. Crim. App.) (*in which the appellate court admonished Defendant's counsel for such misrepresentations and threatened sanctions pursuant to* FED. R. APP. P. 30(a) *and* 3RD CIR. LAR 303.3 *such conduct*).

which the jury could find guilt beyond a reasonable doubt as to Counts I and II for which the Defendant was convicted. 2 Charles Wright, Federal Practice and Procedure Section 467(1982). *See also, Jackson v. Virginia,* 443 U.S. 307 (1979); *Government v. Greene,* 708 F.2d 113 (3d Cir. 1983), *cert. denied,* 465 U.S. 1008, 104 S. Ct. 1004 (1983); *Government v. Grant,* 21 V.I. 20, 775 F.2d 508 (1984); and *Government v. Leycock,* 19 V.I. 44, 678 F.2d 467 (1982). "It is not for the Court to assess the credibility of witnesses, weigh the evidence, or draw inferences of fact from the evidence ... The Court must look to all of the evidence, but must take the view of the evidence and the inferences therefrom most favorable to the government." 2 Charles Wright, Federal Practice and Procedure Section 467 at 663 (1982).

█ In the alternative, the Defendant has filed a motion for new trial. When considering a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses. If the court finds that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the jury's verdict may be set aside and a new trial granted. 3 CHARLES WRIGHT, FEDERAL PRACTICE AND PROCEDURE Section 553 (1982); see also Territorial Court Rule 135.

## A. Premeditation and Deliberation

█ In his motion, the Defendant argues that the Government failed to provide sufficient evidence regarding the premeditation and deliberation element of the first degree murder charge and, therefore, the evidence does not support the jury's verdict on Count I. The Defendant asserts that premeditation requires a showing that the unlawful killing was accomplished by a deliberate and clear intent to take life. *Government v. Lake,* 5 V.I. 594, 605-606 (3d Cir. 1966). Premeditation and deliberation, being subjective, are usually found based upon inferences from objective facts. *Id.* at 606. Therefore, "if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may be fairly inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended." *Id.*

█ The Government presented evidence, including the testimony of several credible eyewitnesses, that the Defendant had

162

threatened to shoot at least two persons prior to the incident, that the Defendant obtained a weapon, cocked it, and walked to the intersection where he started shooting, that the Defendant shot without provocation, and that no one in the vehicle had been carrying a weapon while in the vehicle. It is plausible that the jury chose to believe the eyewitnesses' testimony and reasonably inferred that such preparatory conduct by the Defendant was solid evidence of premediation and deliberation. Moreover, the jury could have also refused to believe the Defendant's claim of self-defense because his testimony was contradicted by his own witnesses. Thus, the court finds that the evidence presented was sufficient to support the jury's finding of premeditation and deliberation beyond a reasonable doubt.

## B. Self-Defense

The Defendant also argues that the Government failed to rebut his claim of self-defense, therefore the jury's verdict as to Count I was contrary to the weight of the evidence. The Defendant contends that he presented credible testimony that the occupants in the truck first shot at him. This position, he states, is supported by the testimony of Mr. Lloyd Herman, the driver of the truck involved in the incident. The Defendant further asserts that because the Government failed to discredit Mr. Lloyd Herman's testimony reasonable doubt exists as to his guilt.

■ Once a defendant has properly placed self-defense in issue, the government must establish beyond a reasonable doubt that the defendant did not act in self-defense. *Government v. Smith*, 27 V.I. 332, 949 F.2d 667 (3d Cir. 1991). The Defendant's self-defense claim was sufficiently rebutted by substantial evidence presented during the trial. First, contrary to the Defendant's testimony that someone in the truck shot at him first, the Defendant's expert witness testified that based upon the position of certain bullet holes at the crime scene there could not have been any gunshots fired from the truck's position. Second, the Government's evidence, including the testimony of numerous eye witnesses who stated that none of the occupants in the back of the truck shot at the Defendant, also countered the Defendant's self-defense claim. Third, the Defendant's threat to shoot made prior to the incident indicates

163

premediation. Fourth, the testimony of the police officers regarding their clear view of the Defendant's deliberate and unprovoked attack on the victims vitiate the Defendant's claim of self-defense. Furthermore, a review of Lloyd Herman's testimony reveals that he did not corroborate the Defendant's statement that someone in the truck shot at him. Mr. Herman testified that he heard shots coming from behind the truck. He never testified that someone inside the truck was also shooting. See Trial Transcript Volume III, 4-57. Since the Defendant was firing at the truck from behind it, Mr. Herman could have been referring to the Defendant's own shots. Thus, the Defendant's self-defense argument was rejected by the jury based upon substantial evidence in the record showing that the Defendant did not act in self-defense.

## C. The Jury Instructions
### 1. Specific Intent

■ The Defendant argues that the court failed to instruct the jury on the issue of specific intent, an essential element of both counts, and that such failure constitutes reversible error. See *Government v. Carmona*, 7 V.I. 441, 422 F2d. 95 (3d Cir. 1970). However, the record reveals that the court did in fact instruct the jury as to specific intent as required by *Carmona*.[2] Moreover, the parties were asked to submit proposed instructions and, in a pretrial conference, they reviewed the court's proposed jury instructions and were offered the opportunity to make suggestions and/or objections. A second opportunity to make suggestions and/or objections was given at side bar at the end of the final instructions. The Defendant agreed with the specific intent instruction that was given, and made no objections at any time. Therefore, the Defendant's argument regarding specific intent is unfounded and is totally without merit.

---

[2]See Trial Transcript Volume IV, 278-280. This is yet another example of Defendant's deliberate misrepresentations of fact, which is totally unacceptable. The Territorial Public Defender's Office has received prior admonishment from the appellate court that such misrepresentations may lead to sanctions. See Footnote 1, *supra*.

## 2. Bias and Prejudice (Prosecutorial Misconduct)

The Defendant further argues that the court failed to give a curative instruction on the issue of bias and prejudice for improper remarks by the prosecutor. He also accuses the prosecutor of misconduct during the trial which prejudiced his case and denied him a fair trial, and of making assertions that Defendant's general reputation was that of a person who carries weapons. Specifically, the Defendant alleges that:

a. The Government elicited testimony regarding alleged threats made by the Defendant to a witness and others, which linked the Defendant to two unsolved crimes that occurred during the same evening of the defendant's arrest;[3] and

b. During the Government's cross examination of the Defendant and its rebuttal summation, the prosecutor improperly made references to the Defendant's association with other known criminals and his reputation for carrying weapons.

He argues that this conduct by the prosecutor was in violation of Federal Rule of Evidence 403 which bars the introduction of any evidence which may be more prejudicial than probative and Federal Rule of Evidence 404(a)(1) which prevents the impeachment of a witness through evidence of prior misconduct or crime for which that person has not been convicted. While the Defendant acknowledges that the court interrupted and admonished the prosecutor for his remarks and sustained the Defendant's objection to the remarks, he argues that the court's action was not sufficient to counter the prejudice created by such statements. To sufficiently counter the prejudice, the Defendant argues that the court should have given the jury a curative instruction on the issue of bias and prejudice following the improper remarks made by the prosecutor. The Defendant also accuses the prosecutor of misconduct during closing argument by repeated finger pointing, and of characterizing the Defendant as a liar and defense counsel as a bad person

---

[3] On the same evening of the Defendant's arrest, Malik Meyers was fatally shot, and George VanHolten was shot and wounded. At a pre-trial conference held on June 21, 1994, the court ruled that no references to the death of Malik Meyers and the shooting of George VanHolten would be allowed during trial.

who twists the truth and treats the jurors as though they are stupid. The Defendant also asserts that the prosecutor made other negative remarks about defense counsel which were imputed to the Defendant.

■ The alleged misconduct by the prosecution must be viewed in the context of the entire trial in determining its prejudicial effect. *See U.S. v. Young*, 470 U.S. 1 (1985) (*holding that inappropriate prosecutorial comments, standing alone, would not justify reviewing court in reversing criminal conviction obtained in otherwise fair proceeding; remarks must be examined within context of trial to determine whether prosecutor's behavior amounted to prejudicial error*); *accord Government v. Charleswell*, 24 F.3d 571, 576 (3d Cir. 1994).[4] Here again, the court notes that the Defendant has failed to identify specific comments or statements made by the prosecution which he alleges are improper. Moreover, in reviewing the record, this court found no specific statements suggested by the Defendant, and in conducting the trial saw and heard no prosecutorial misconduct warranting reversal of the Defendant's conviction or the granting of a new trial.

During the Government's direct examination of two eye-witnesses, Steve Anthony and John Weekes, collateral matters were raised regarding two individuals who were involved in a separate incident which occurred on the same evening. However, as the Government argues in their opposition to the Defendant's motion, the reference to those individuals was limited to their brief testimony regarding who they were with at the night of the incident.[5] Steve Anthony testified about alleged threats made to himself as well as the two individuals.[6] Because the witness was an

---

[4] *See also, Government v. Joseph*, 770 F.2d 343 (3d Cir. 1985) (*holding that alleged prosecutorial misconduct must be evaluated in light of the prosecutors argument and the entire record, and if a review of the record convinces the court that the jury would have convicted defendant even if it were not exposed to the alleged improper prosecutorial comments then no actual prejudice occurred*).

[5] John Weekes offered testimony that he attended the club with Malik Meyers and George VanHolten and others. *See* Trial Transcript Volume III, 162-163. Steve Anthony also testified that he was threatened by the Defendant and that he also heard the Defendant threaten Malik Meyers and George VanHolten.

[6] The direct examination of Steve Anthony by the prosecution:
Q. Did you see Roberto Smalls inside the Calabash Jam?

actual victim of the threat, his testimony was not improper. Moreover, contrary to the implications made by the Defendant, Mr. Anthony and Mr. Weekes said nothing about the two unsolved crimes that occurred that same evening.

Also, the court sustained the Defendant's objections to those questions regarding the Defendant's reputation for carrying guns and failure to call certain witnesses during the cross examination of the Defendant. For example, the prosecution questioned the Defendant about Police Officer Marrishow, an eye-witness:

> Q. And you said that Marrishow has been stopping you every time he sees you for two and a half years?
> A. Just about.
> Q. And is that because you carry a gun in the car. Is that because you're known to walk around with a weapon ....
> ATTORNEY SCHNEIDER: Your honor, I object ...
> THE Court: ... in terms of this last question, I'll sustain your objection for the last question ...
> (Trial Transcript Volume IV, 94.)

Later, the prosecution questioned the Defendant about the individual from whom he testified he received a firearm on the day of the incident. The court again sustained the Defendant's objection.

> Q. What about Danny, will he be here to testify?
> A. I don't know.
> Q. Did you attempt to get him here?
> ATTORNEY SCHNEIDER: Your Honor, I object again.
> THE Court: I sustain the objection. Defendant doesn't have to call anybody in here. We all know it.
> (Trial Transcript Volume IV, 104.)

The Government's cross-examination of the Defendant regarding the individual from whom he received the firearm was in response to the Defendant's testimony on direct examination that he received a firearm from an individual as security for a loan. It

---

A. Yes.
Q. Did he say anything to you?
A. He tell me, Malik [Meyers] and Cobra [George VanHolten] "I going shoot you in your face."
(Trial Transcript Volume III, 273)

was the Defendant who testified that the individual had been arrested. *See* Trial Transcript Volume IV at 64. Finally, in reviewing the record, the court could not identify any prejudicial comments about opposing counsel or prejudicial antics made by the prosecutor during closing arguments.[7]

■ In its preliminary instructions, the court instructed the jury regarding the objections made by the attorneys and the difference between overruling and sustaining an objection. A specific curative instruction need not be given every time an objection is sustained. Moreover, in its preliminary and final instructions to the jury, the court instructed the jury that in deciding the matter, the methods used by the attorneys in presenting their case and the arguments of the attorneys during opening and closing remarks were not evidence. The jury was further instructed that in its deliberation it should not consider prejudice or bias for or against the Defendant, nor any other matter that was not evidence. In light of those curative measures taken by the court and the substantial eyewitness evidence against the Defendant, any inappropriate prosecutorial conduct when examined in the context of the entire trial did not deprive the Defendant of a fair trial and therefore cannot justify a judgment of acquittal nor a new trial.

## D. Continuing Discovery Violations

The Defendant argues that he must be acquitted or given a new trial because the Government failed to timely provide discovery materials, including material mandated by *Brady v. Maryland*, 373 U.S. 83 (1963). Particularly, the Defendant asserts that the Government failed to produce the statement of John Weekes, a prosecution

---

[7] The following are taken from the prosecutor's closing and rebuttal closing. These remarks tend to address the arguments raised by the Defendant; however, the court finds that the remarks are harmless in light of the overwhelming evidence supporting the Government's arguments and contentions.

"This, however, is where the truck was where the gunshots were suppose to be where Roberto Smalls claims somebody fired at him. It just didn't happen like that and they're playing you for stupid." Trial Transcript, Volume IV at 225.

"He [Defendant] has every opportunity to take the stand if he wishes, and he wished to do so and did, and he lied and now he wants you to believe the lie." *Id.* at 262.

"There is not reason to believe anything Roberto Smalls said. There is all the reason in the world to believe what the Government witnesses said." *Id.* 264-265.

witness, which he alleges was *Brady* material. The Defendant also claims that the Government failed to produce the criminal record of Kenneth Venzen, a material Government eyewitness. Claiming he did not have Mr. Venzen's record, the Defendant argues that he was unable to properly impeach him during cross examination. The Defendant further alleges that the Government failed to promptly notify him of the recovery of the murder weapon and denied him immediate access to the murder weapon and other material physical evidence.

"A valid *Brady* complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." *U.S. v. Perdomo*, 929 F.2d 967, 970, *citing Moore v. Illinois*, 408 U.S. 786, 92 S. Ct. 2562 (1972). The Defendant's arguments fail to meet this standard. The court ordered full disclosure and scheduled appropriate pretrial conferences to insure that all discovery was completed. Indeed, the court instructed the Government to turn over to the Defendant Jencks Act, 18 U.S.C. Section 3500, material prior to the trial. The record reveals that the Government did produce the written statement of John Weekes after direct examination but also that Mr. Weekes' statement was not *Brady* material. The mere fact that Mr. Weekes' statement included his comment that he believed that more than one gun was fired does not render it exculpatory. His comment was consistent with the testimony at trial indicating that there were shots fired by the Defendant and the police officers. Moreover, Mr. Weekes offered unimpeached testimony at trial that none of the passengers in the truck had a gun. *See* Trial Transcript Volume II, 167-170.

Furthermore, a review of the record reveals that the Government did not withhold or suppress the criminal record of Mr. Venzen, but, in fact, responded to the Defendant's discovery request.[8] The Defendant therefore knew prior to the time of the cross-examination of Mr. Venzen that he had a criminal conviction. Also, the

---

[8] The Government filed a response to defendant's discovery request on July 14, 1994 stating that Kenneth Venzen had a prior conviction in the Division of St. Croix and would forward a copy to the defense upon its receipt. In its supplemental response to the Defendant's motion, the Government asserts that prior to trial a copy of the conviction was hand-delivered to the defense.

Defendant has failed to show that the conviction was reasonably likely to affect the outcome of the trial. *Giglio v. United States*, 405 U.S. 150 (1972). The Government also timely notified the defense of the discovery of the murder weapon.[9] The delay in the testing of the weapon caused by its late discovery cannot be imputed to the Government. The copies of the results of the tests by the F.B.I were produced for the Defendant's review. Also, the Defendant's firearm expert was allowed to examine the weapon prior to trial and to hear the testimony of the Government's expert witness during the trial. Thus, there is no merit to these contentions by the Defendant.

### E. The Amended Information

The Defendant challenges the Amended Information. He argues that it is insufficient as a matter of law because it fails to make the requisite factual allegations showing that the Defendant:

1. shot and killed Mr. James with a handgun in violation of 14 V.I.C. 922(a)(1); and
2. shot at Mr. Venzen with a handgun in violation of 14 V.I.C. Section 295(1).

The Defendant contends that the Amended Information merely tracks the statutes, lacks a "to wit" clause, and did not put the Defendant on notice of the precise conduct for which he was being charged. *See, Government v. Pemberton*, 813 F.2d 626 (1987) and *Government v. David*, 20 V.I. 259 (1983).

■ An information must contain each element of an offense and must give fair notice to the defendant of the charges against him. A plain, concise, and definite statement of the essential facts constituting the offense is sufficient. *See*, FED.R.CRIM.P. 7(c)(1); 1 CHARLES WRIGHT, FEDERAL PRACTICE AND PROCEDURE Sections 123 and 125 (1982); *see also, Russell v. U.S.*, 369 U.S. 749 (1962). Federal Rule Criminal Procedure 7(c)(1) further requires that the information state the official citation of the statute which the defendant is alleged to have violated. However, "[w]hat has been called a bare

---

[9] The weapon was recovered on June 13, 1994 and the Defendant was notified of its discovery on June 21, 1994.

bones indictment using only statutory language is quite common and entirely permissible so long as the statutes set forth fully, directly, and expressly all essential elements of the crime intended to be punished." 1 CHARLES WRIGHT, FEDERAL PRACTICE AND PROCEDURE Section 125 (1982). Essentially, the information must contain all the elements of the offense charged and must sufficiently apprise the defendant of what he must be prepared to meet. In the event subsequent actions are brought against the Defendant for a similar offense, the record must be able to show with accuracy the extent to which he may plead a former acquittal or conviction. *Hamling v. U.S.*, 418 U.S. 87 at 117, 94 S. Ct. 2887 at 2907 (1974) and *Russell v. U.S.*, 369 U.S. 749, 763-765 (1962); *accord Government v. Pemberton*, 813 F.2d 626 (3d Cir. 1987) and *Government v. David*, 20 V.I. 259 (1984).

The Information filed against the Defendant substantially conforms with the requirements of Federal Rule Criminal Procedure 7 and the Sixth Amendment as it contains all the elements of the crimes charged. Count I charges the Defendant with first degree murder and addresses the elements of this crime, (a) date, time and place of the incident, (b) the unlawful killing of a human being, Renaldo James, (c) with malice aforethought, (d) with deliberation, premeditation and wilfulness and (e) not in self-defense. Count II charges the Defendant with first degree assault and addresses the elements of this crime, specifically (a) date, time and place of the incident (b) assault of Kenneth Venzen, and (c) with intent to murder. The Information is accompanied with an affidavit which indicates that the Defendant possessed a firearm which he aimed and shot at the occupants in the back of the truck, thereby killing Renaldo James and injuring Kenneth Venzen.

The failure to include a "to wit" clause or a clause which states that the offenses were effectuated with a firearm does not render the information fatally defective since it is not necessary that an information set forth all details of the incident or all the means by which the prosecution hopes to prove that the defendant committed the specified offense. *Government v. Commissiong*, 706 F. Supp. 1172, (D.V.I. 1989) *(citing U.S. v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) *(en banc), cert. denied*, 97 S. Ct. 2641 (1977). "Where a defendant needs further particularization of the means encom-

passed in a particular allegation, he can move for a bill of particulars." *Id.* at 1181 and FED. R. CRIM. P. 7(f). Indeed, he may utilize the discovery process for any additional specifications. In this case, the Defendant did not move for a Bill of Particulars. Furthermore, the Information and attached affidavit and the discovery exchange by the parties sufficiently apprised the Defendant of the means, discharging a firearm, by which the Government alleged that the Defendant committed the murder and the assault. It is therefore quite obvious that in any subsequent action against the Defendant for a similar offense, this record accurately shows the offenses for which he is convicted and which he may plead to avoid double jeopardy. This court therefore concludes that the Amended Information contains all the elements of the offenses charged and sufficiently apprised the Defendant of the precise conduct for which he was being charged. Indeed, at trial the Defendant was well prepared to meet the charges.

### F. Fair Trial Consideration

The Defendant argues that he was also denied his right to a fair trial because the jury was substantially prejudiced by the extensive and inaccurate pretrial and trial publicity; by the presence of heavily armed police officers outside the courthouse during the trial; by the failure of the Court to sequester the jury prior to trial; and by the removal of two jurors prior to deliberation. In opposition, the Government contends that the Defendant's allegations are untimely and without merit. We agree. A court must, in its discretion, take certain measures to ensure that the defendant's constitutional right to a fair trial is protected. *See generally, Shepard v. Marwell*, 384 U.S. 333 (1966). In the present case, several measures were taken by the Court which protected the Defendant's right to a fair trial.

First, the Defendant claims to have been prejudiced at trial by the pre-trial and trial publicity.[10] "The constitutional standard of fairness requires that a defendant have 'a panel of impartial

---

[10] The Defendant complains about inaccurate media coverage following the trial, including an article in the DAILY NEWS reporting that the judge, jury, and certain witnesses received threats. Unquestionably, these arguments about the post trial publicity are irrelevant to the court's consideration of the Defendant's present motion.

"indifferent" jurors'. Qualified jurors need not, however, be totally ignorant of the facts and the issues involved." *Murphy v. Florida*, 421 U.S. 794, 800 (1975); *see also Government v. Riley*, 21 V.I. 429 (1992). The *Murphy* court held that there is no presumption that the jurors exposed to pretrial publicity would not be impartial, and the burden is on the Defendant to establish that an individual juror had a preconceived notion about the case which is so strong that it raises a presumption of partiality. *Id*. In this case, the Defendant has failed to make any specific allegation of juror misconduct which shows that the jury's verdict may have been tainted. Also, the Defendant participated fully in the jury selection process during which all potential jurors were voir dired about the pre-trial publicity. Once the jury was sworn, the court in its instructions throughout the proceedings admonished the jury to avoid all media coverage of the trial.

Second, being aware of the public and the media's interest in the trial and desiring to mitigate any potential prejudice to the Defendant and to ensure a fair trial, the court took security measures by stationing more marshals inside the court.[11] These measures were required due to threats to witnesses.[12] The Defendant failed to make any pre-trial or trial objections to the security measures taken. The Defendant also failed to make a specific voir dire request regarding the security measures during the jury selection and failed to request a specific instruction with respect thereto.

Finally, to ensure an impartial jury and after careful consideration and consultation with the parties, the court sequestered the jury from the second day of trial, after one of the jurors was visited by one of the Defendant's relative after the first day of trial. In addition, the defense participated in an in-camera voir dire examination of all the jurors individually regarding their knowledge of the alleged incident, and their ability to decide the case on the

---

[11] Contrary to the defendant's assertion, it was the decision of the Bureau of Corrections and the Police Department, not the court, to station guards around the Justice Center, which also houses the prison where the Defendant was jailed. The precautions were necessary because of threats to bomb the building.

[12] The court issued material witness warrants to prevent those witnesses from fleeing the jurisdiction out of fear caused by the threats.

merits. After that voir dire all parties, including the defense, stipulated that only two jurors were questionable, and that they both would be removed prior to jury deliberation, instead of immediately, to avoid any suspicion and any further attempt to contact other jurors. Indeed, the measures taken by the court, including security, the sequestration of the jury, and the removal of two jurors were effectuated solely to protect the Defendant's right to a fair trial, which was not violated.

## IV.

In view of the foregoing, the court concludes that judgment of acquittal or, in the alternative, a new trial is not warranted. The arguments raised by the Defendant are not supported by the record. There is substantial evidence, when viewed in the light most favorable to the Government, which supports the jury's verdict on Counts I and II of the Amended Information. Likewise, the jury's verdict is sustained by the weight and the credibility of the evidence at trial, and the Defendant's guilt has been established beyond a reasonable doubt as to Counts I and II. In accordance with the forgoing, the Defendant's Motion for Judgment of Acquittal or, in the alternative, his Motion for New Trial will be denied.

### ORDER I

This matter is before the Court on the Defendant's Motion for Judgment of Acquittal as to Counts I and II pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure; and

The Court having considered the submissions of the parties, and for the reasons set forth in the Court's Memorandum of even date; it is hereby,

ORDERED, that the Defendant's Motion for Judgment of Acquittal as to Counts I and II or, in the alternative, his Motion for New Trial is DENIED.