**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**TONY DAVIS a/k/a LISA DAVIZ, KENNETH EDWARDS a/k/a KEVIN JONES a/k/a WILLIAM OBERG, Defendants**

Crim. No. F184/1996

Crim. No. F186/1996

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 10, 1997

Douglas Sprotte, Esq., (Assistant Attorney General), St. Thomas, U.S.V.I., *for Plaintiff*

J. DARYL DODSON, ESQ., (Dudley, Topper & Feuerzeig), St. Thomas, U.S.V.I., *for Defendant Tony Davis*

RICHARD H. DOLLISON, ESQ., (D'Amour, Jones, Stryker, Duensing & Nichols), St. Thomas, U.S.V.I., *for Defendant Kenneth Edwards*

HOLLAR, *Judge*

## MEMORANDUM OPINION

Before the Court are post trial motions of defendants Lisa Davis ("Davis")[1] and Kenneth Edwards ("Edwards") for judgment of acquittal pursuant to Rule 29 of the *Federal Rules of Criminal Procedure* and Edwards' motion, in the alternative, for a new trial, pursuant to *Fed. R. Crim. P. 33.*[2] The Government opposes the relief sought by defendants. For reasons set forth below, defendants' motions are denied.

## I. FACTS AND PROCEDURAL HISTORY

During the four-day jury trial, the Government offered evidence in an effort to establish a single overall scheme to steal diamonds from Cardow Jewelers, which began in the Pennsylvania-New Jersey area, on or before April 20, 1996, and culminated in the grand larceny of a wallet of loose diamonds from the Cardow Diamond Center on Main Street, in downtown Charlotte Amalie, St. Thomas, Virgin Islands. The evidence elicited disclosed that Edwards and Davis traveled to the Virgin Islands with two other individuals, on Saturday, April 20, 1996, on airline tickets purchased under a false name[3] by a co-conspirator, who was a minor. The party of four stayed at the Emerald Beach Resort in a room that

---

[1] The defendant Lisa Davis' motion for judgment of acquittal was only in connection with the conspiracy set forth at Count III of the superseding information dated October 11, 1996.

[2] The appropriate rule for seeking a new trial in the Territorial Court is *Terr. Ct. R. 135.*

[3] The Government offered testimony that the minor co-conspirator traveled from the Philadelphia area to a travel agency located in New Jersey on April 19, 1996, represented herself to be Lynn Oberg, and purchased airline tickets for herself, Davis, Edwards, and another, with a credit card belonging to Lynn Oberg. The credit card utilized was ultimately reported lost or stolen. The owner of the credit card, Lynn Oberg never met, much less authorized the minor to use her card. Lynn Oberg testified that she only realized that her credit card was missing after she received a call from

74

the minor co-conspirator booked using the name of Lynn Oberg. Edwards falsely represented himself to the desk clerk at Emerald Beach Resort as the minor co-conspirator's husband. Although the room was booked for two days, both Davis and Edwards were reported to have traveled to St. Thomas without luggage.

On Sunday, April 21, 1996, Edwards and Davis, together with the minor and another, appeared at the Cardow Diamond Center store. Once inside, the four separated and each took different positions in the store. Davis went to the loose diamond counter and immediately engaged the store clerk manning that area. Edwards also took a position at the diamond counter, but in the corner several feet away from Davis. The minor repeatedly urged another clerk to leave her "normal station" near the loose diamonds and to show her jewelry in the showcase at the far end of the store.

While at the diamond counter, Davis requested to see loose diamonds, which were retrieved by a store clerk from a small office behind the display counter. Because Davis expressed a desire to purchase larger carat diamonds than were shown or available at the branch location, the store clerk placed loose diamonds back in a wallet and returned them to the small office. Within minutes after the clerk returned the loose diamonds to the small office, Edwards requested the assistance of the same clerk in viewing wedding bands displayed in the showcase at the opposite end of the counter. Edwards then began pointing to different wedding bands in rapid succession. Finally, in a bold and offensive effort to completely divert the clerk's attention from the small office area where the loose diamonds were located, Edwards forcefully held the clerk's head down against the countertop, under the guise of directing the clerk to the items pointed out. While this diversion tactic shocked and appalled the store clerk, it nonetheless permitted Davis to successfully crawl behind the counter to the small office, grab the wallet of loose diamonds and leave the store. Upon exiting Cardow, Davis was observed signalling or waving to Edwards, who then abruptly left the store without making a purchase. A

Citibank, alerting her that a strange inquiry had been made on her card number from the Emerald Beach Hotel in the Virgin Islands.

video surveillance camera caught Davis as she crawled behind the counter, entered the small office, and crawled out with the wallet of loose diamonds, unnoticed by the employees and patrons of the store.[4] Later that same day, the wallet of loose diamonds was discovered missing by store personnel.

On the evening of the jewelry heist, almost by happenstance, Louis DeLyrot, Vice President of Cardow Stores saw Davis at the Emerald Beach Resort.[5] He immediately recognized her from the video surveillance tapes he had reviewed earlier with security personnel. Another Cardow employee identified both Davis and Edwards the following day at Emerald Beach.[6] Both defendants were later arrested on April 23, 1996 at the Emerald Beach Resort. Edwards attempted to flee when apprehended.

During the "booking" process, after defendants were arrested, a witness saw Edwards reach into the front of his pants, remove blue paper wrappings and digest the contents in a clandestine manner. A police officer found diamond wrappers that Cardow uses for its loose diamonds in the immediate area where the witness observed defendant's activities. Davis, after being given her *Miranda*[7] warnings, waived them and admitted *inter alia* that she was the female on the video tape crawling behind the counter and stealing the wallet of loose diamonds.[8]

In further establishing the defendants' culpability, Micheal Pepper, the Cardow store manager, unexpectedly testified that during the trial, while the jury was on a "view" of the crime scene at Cardow's Diamond Center, he personally overheard Edwards tell Davis that "they" would not be able to see her (Davis) in the tapes crawling behind the counter because of the way he (Edwards) positioned a bag on the counter.

---

[4]Hidden surveillance camera(s) were installed in the various locations of the store, unbeknownst to the employees of Cardow, for the purpose of detecting any possible pilferage or irregular transactions involving employees. Two cameras were installed in the immediate area, however, one of the cameras was inoperative.

[5]The defendants were apparently unaware that the owner of Cardow was also the owner of Emerald Beach that the store manager resided at Emerald Beach.

[6]Because of her "striking" appearance, Davis was consistently identified by Cardow employees as a very tall, "model-like," light skinned, Black or Hispanic female.

[7]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[8]Davis' original statement had to be redacted because it implicated the co-defendants.

On May 2, 1996, Davis and Edwards were arraigned and formally charged on a multiple count information. Edwards was charged in Count II of a superseding information with aiding and abetting a grand larceny, in violation of V.I. Code Ann. tit. 14, §§ 1081 and 1083(1) and in Count IV, with conspiring to commit grand larceny, in violation of V.I. Code Ann. tit. 14, §§ 1081, 1083(1) and 551(1). Other charges against Edwards were dismissed subsequent to the arraignment. Davis was charged in Count I of the superseding information with grand larceny, in violation of V.I. Code Ann. tit. 14, §§ 1081 and 1083(1), in Count III with conspiracy to commit grand larceny, in violation of V.I. Code Ann. §§ 1081, 1083(1) and 551(1), and in Count VI with receiving stolen property, in violation of V.I. Code Ann. tit. 14, § 2101(a). Other charges against Davis were subsequently dismissed. Both defendants pled "not guilty" to all charges filed against them.

A jury was impanelled and sworn on October 7, 1996, and the trial on the merits commenced on the same date. At the conclusion of the Government's case-in-chief, counsel for Edwards and Davis moved for a judgment of acquittal. After hearing oral arguments, the Court reserved decision on the motion(s) pursuant to *Fed.R.Crim.P. 29(b)*.

Following the conclusion of all the evidence, closing arguments and instructions to the jury, the jury went into deliberations and subsequently returned "guilty verdicts" on all counts. Edwards was found guilty on the charges of conspiracy to commit grand larceny and aiding and abetting a grand larceny, while Davis was found guilty on the charges of conspiracy to commit grand larceny, grand larceny, and receiving stolen property.

After the discharge of the jury, Davis renewed her motion for judgment of acquittal on the conspiracy charge, pursuant to *Fed.R.Crim.P. 29(c)*. Edwards also renewed his motion for judgment on acquittal on both counts against him. Edwards, additionally made a motion, in the alternative, for a new trial, pursuant to *Fed.R.Crim.P. 33*.

## II. DISCUSSION

This Court is asked to resolve several issues in relation to the motions for judgment of acquittal and alternatively, motion for a

new trial. The issues raised are as follows: (1) whether there was sufficient evidence to sustain a conviction against Edwards for grand larceny, as an aider and abettor, as charged in Count II;[9] (2) whether there was sufficient evidence to sustain convictions against Davis and Edwards for conspiracy to commit grand larceny, as set forth in Counts III[10] and IV[11] of the information; (3) whether the jury's guilty verdict was against the weight of the evidence and irrational, thus warranting a new trial with respect to the charges against Edwards; (4) whether there existed any valid Brady violation claims or discovery violations that would warrant a new trial; and (5) whether there were erroneous court rulings that had a substantial impact on the outcome of the trial, thus necessitating a new trial.

## A. MOTION FOR JUDGMENT OF ACQUITTAL

Lisa Davis requests judgment of acquittal on Count III, conspiring to commit grand larceny pursuant to *Fed. R. Crim. P. 29.* Kenneth Edwards also moves for judgment of acquittal, but on Counts II and IV, specifically grand larceny by aiding and abetting and conspiracy to commit grand larceny.

### 1. *Standard*

■ In considering the defendants' motion for judgment of

---

[9] Count II of the information charges Edwards as follows:
On or about April 21, 1996, in St. Thomas, Virgin Islands, Kenneth Edwards a/k/a Kevin James a/k/a William Oberg, did aid and abet the unlawful taking, stealing, or driving away of the personal property of another, to wit: a wallet of loose diamonds owned by Cardow Jewelers, said property being more then $100.00 in value, with intent to deprive the owner thereof permanently, in violation of 14 V.I.C. 1081 and 1083(1).

[10] Count III of the information charges Davis as follows:
On or about April 21, 1996, in St. Thomas, Virgin Islands, Tony Davis a/k/a Lisa Daviz, did conspire with Lester Rufus Jones and Kenneth Edwards a/k/a Kevin James a/k/a William Oberg, to unlawfully take, steal, or drive away the personal property of another, to wit: a wallet of loose diamonds owned by Cardow Jewelers, said property being more than $100.00 in value, with intent to deprive the owner thereof, permanently, in violation of 14 V.I.C. 1081, 1083(1) and 551(1).

[11] Count IV of the information charges Edwards as follows:
On or about April 21, 1996, in St. Thomas, Virgin Islands, Kenneth Edwards, a/k/a Kevin James a/k/a William Oberg, did conspire with Tony Davis, a/k/a Lisa Daviz and Lester Rufus Jones, to unlawfully take, steal, or drive away the personal property of another, to wit: a wallet of loose diamonds owned by Cardow Jewelers, said property being more than $100.00 in value, with intent to deprive the owner thereof, permanently, in violation of 14 V.I.C. 1081, 1083(1) and 551(1).

acquittal, the standard to be used is whether, in viewing all of the evidence adduced at trial, in the light most favorable to the Government, there is substantial evidence from which the jury could find guilt beyond a reasonable doubt. *Government of the Virgin Islands v. Smalls,* 32 V.I. 157 (Terr. Ct. St.T and St.J. 1995) (citing 2 Charles Wright, *Federal Practice and Procedure* § 467 (1982)). See also *Government of the Virgin Islands v. Grant,* 21 V.I. 20 (D.C.V.I. 1984); *Government of the Virgin Islands v. Greene,* 708 F.2d 113 (3rd Cir. 1983), reh'g denied, 712 F.2d 824 (3rd Cir. 1983), *cert. denied* 465 U.S. 1008 (1984). When ruling on a motion for judgment of acquittal after the jury has returned a guilty verdict, the court must determine whether the government presented sufficient evidence upon which a rational jury could find beyond a reasonable doubt that it proved each element of the offense for which defendant seeks acquittal. *Government of the Virgin Islands v. Commissiong,* 706 F. Supp. 1172 (D.C.V.I. 1989).

2. *Evidence Was Sufficient To Sustain The Conviction Against Edwards For Grand Larceny, By Aiding and Abetting*

■ Edwards was charged with the substantive offense of grand larceny. The Government, however, characterized Edwards' participation as an "aider and abettor." Statutorily, whoever aids and abets the commission of an offense is punishable as a principal. V.I. Code Ann. tit. 14, § 11 states in pertinent part:

(a) Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever wilfully causes an act to be done which if directly performed by him or another person would be a crime or offense, is punishable as a principal.

(c) Persons within this section shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal.

■ Thus, under the theory of "aiding and abetting," guilt of an accused in a criminal case may be established without proof that he

79

or she personally did every act constituting the offense alleged. *United States v. Walker*, 621 F.2d 163, 165 (5th Cir. 1980). The law recognizes that, ordinarily, anything a person can do for himself or herself may also be accomplished through the direction of another person, as his or her agent, or by acting in concert with, or under the direction of another person or persons in a joint effort or enterprise. *Id.*

■ Before a defendant may be held criminally responsible for the acts of others, it is necessary that the accused wilfully associated himself or herself in some way with the criminal venture and willfully participated in it as he or she would in something he or she wished to bring about. *United States v. Gomez*, 733 F.2d 69, 72-73 (8th Cir. 1984). The Government's burden is to prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself or herself in some way with the crime charged and that he or she participated, with intent to commit the crime. *Id.* Mere presence at the scene of a crime is not sufficient to establish that a defendant aided and abetted the crime unless the Government proves beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. *United States v. Wright*, 742 F.2d 1215, 1221 (9th Cir. 1984).

■ Essentially, four elements must be proved by the Government to make out a case of aiding and abetting, to wit: (1) the person who is being aided must be intentionally committing a crime; (2) the aider or abettor, must know that the other is committing the crime; (3) the aider or abettor must have the purpose to aid that other to commit the crime; and (4) the aider must in fact render aid or assistance. *United States v. Nolan*, 718 F.2d 589, 592 (3rd Cir. 1983). All four elements have been established against Edwards by the evidence presented by the Government in the case *sub judice.*

As to the first element, the Government readily established that Davis was the individual who was being aided by Edwards and that Davis intentionally stole a wallet of loose diamonds from the

Cardow Diamond Center.[12] The second element was established by testimony that Edwards and Davis appeared in the Cardow Store at the same time and that when Davis exited the store she waived or signalled Edwards. Additionally, Edwards was observed swallowing what was believed to be diamonds after his arrest during the booking proceedings. The third and fourth elements were also established through testimony that Edwards created the diversion Davis required in order to steal the diamonds unnoticed.

Edwards' participation was more than his mere presence on the scene. Indeed, Edwards actively assisted Davis by furnishing the diversion she needed in order for her to avoid being seen by the only store clerk who could have detected her behind the counter. This assistance was necessary for the successful execution of the crime. Edwards' actions also indicated that he knowingly and willfully participated in the crime of grand larceny, and he undeniably knew that his actions would enable Davis to snatch the diamonds without detection.

■ Taking all of the evidence in the light most favorable to the Government, the Court finds that the prosecution has presented "substantial evidence" against defendant Edwards, from which a jury could find Edwards guilty beyond a reasonable doubt as to the charge of grand larceny by aiding and abetting. Therefore, the motion for judgment of acquittal for that count is denied.

3. *Evidence Was Sufficient To Sustain Convictions Against Davis and Edwards On The Conspiracy Counts*

Both Davis and Edwards contend there was insufficient evidence against them to sustain a finding of guilt beyond a reasonable doubt on Counts III and IV, respectively, because the Government proved multiple conspiracies or a conspiracy other than the one charged in the information,[13] thus creating a prejudicial variance. The Government, on the other hand, argues that no variance was

---

[12] The jury returned a guilty verdict against Lisa Davis for grand larceny of the loose diamonds belonging to the Cardow Diamond Center.

[13] The defendants maintain that the Government at best proved conspiracy to fraudulently use a lost or stolen credit card but not a conspiracy to steal diamonds from Cardow Jewelers, the offense charged in the information against them.

created because it proved a single overall conspiracy to steal loose diamonds from Cardow Jewelers, with individuals performing various functions and incidental offenses in an effort to achieve that common objective.

a. *Variance Versus Single Overall Conspiracy*

Not only must the court determine, in the light most favorable to the Government, whether there exists substantial evidence from which a rational jury could find defendants guilty of conspiracy beyond a reasonable doubt, it must also determine whether a variance was created. A variance exists when the charging terms of an indictment or information remains unaltered, but the evidence at trial proves facts other than those alleged in the indictment or information. *United States v. Castro*, 776 F.2d 1118 (3rd Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986).[14]

■ In conspiracy cases, a prejudicial variance, warranting a judgment of acquittal, is created if more than one conspiracy is proven while the information charges a single conspiracy, *Kotteakos v. United States*, 328 U.S. 750, 755-56 (1946), or if a conspiracy, separate and distinct from the one charged in the indictment or information is proved. *United States v. Camp*, 32 F.3d 102, 105 (4th Cir. 1994) (*dictum*) (variance prejudicial where government proved separate conspiracy from the one charged in the indictment), *cert. denied*, 115 S. Ct. 1118 (1995)). Conversely, if a jury could find a

---

[14] To warrant a judgment of acquittal, a real and tangible difference between the allegations in the pleadings and the proof offered must exist. The difference must be both substantial and material. *Fed.R.Crim.P. 52(a)*. Acknowledging this premise, a nonprejudicial variance is identified in the information because Count III alleged Davis conspired with *Lester Rufus Jones* and Kenneth Edwards, and Count IV alleged Edwards conspired with *Lester Rufus Jones* and Lisa Davis. Lester Rufus Jones, however, was acquitted of all charges, including conspiracy with Davis and Edwards. Ergo, the Government failed to prove beyond a reasonable doubt that there was a conspiracy involving Jones as a participant. The absence of proof that Jones was a co-conspirator was not fatal because the statute V.I. Code Ann. tit. 14, § 551(1) only requires two or more individuals to be involved in a conspiracy. The jury found Davis and Edwards guilty of conspiring with each other to steal diamonds, therefore, the statutory number of co-conspirators was satisfied. Furthermore, variance relating to discrepancies in the number of individuals alleged to have participated in a conspiracy are deemed nonprejudicial. See *United States v. Schurr*, 775 F.2d 549, 555 (3rd Cir. 1985) (no fatal variance between indictment charging conspiracy involving five persons and proof that only three were involved because indictment gave adequate notice of charges and presented no danger of double jeopardy).

single overall agreement to achieve a common objective, with individuals performing various overt acts and different functions, a single conspiracy is proved and no impermissible variance is created. *United States v. Crouch*, 46 F.3d (3rd Cir. 1995), *cert. denied*, 475 U.S. 1029 (1996); *United States v. Davis*, 882 F.2d 1334, 1342 (8th Cir. 1989), *cert. denied*, 494 U.S. 1027 (1990).[15]

b. *Identification Of Single Overall Conspiracy*

■ The Supreme Court as well as this Circuit have devised formulas and tests in order to identify when a single overall conspiracy has been proven. In *Blumenthal v. United States*, 332 U.S. 539, 559 (1947), the Court ruled that a single conspiracy is proved when all defendants knew of and joined in the overriding scheme and with this knowledge and action sought a common end. In *United States v. Reyes*, 930 F.2d 310, 313 (3rd Cir. 1991), the court held that conspiracy is proven when there is evidence of a large general scheme, and of aid given by some conspirators to others in aid of that scheme. An elaborate test for recognizing a single overall conspiracy was most recently developed in *United States v. Barr*, 963 F.2d 641, 648 (3rd Cir. 1992). The test requires the Court to first examine whether there is a common goal among the conspirators. Second, the nature of the scheme must be scrutinized to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. Third, the court must determine the extent to which the participants overlap in the various dealings.

In applying the *Barr* analysis to the case *sub judice,* the three prong test establishing a single conspiracy has been satisfied because the evidence discloses that Davis and Edwards joined the conspiracy in the Philadelphia area where an overall scheme to steal diamonds in St. Thomas originated. Next, the participants committed various continuous acts and incidental crimes in order to achieve the ultimate common goal of stealing the loose diamonds at Cardow. Specifically, the minor purchased airline tickets

---

[15] In determining whether a prejudicial or impermissible variance exists, the standard of review requires the evidence to be viewed in the light most favorable to the Government.

for herself, Davis, Edwards and another with a lost or stolen credit card belonging to Lynn Oberg. The conspirators, including Davis and Edwards, immediately assumed false names and traveled to St. Thomas using aliases and false identifications. Once in St. Thomas, the minor booked a room at Emerald Beach Hotel using the name of Lynn Oberg, the owner of the lost or stolen credit card. Edwards then falsely represented himself to the desk clerk at the hotel as being William Oberg, the minor's husband. The day after arriving in St. Thomas, Davis, Edwards, James and the minor all appeared at Cardow's Diamond Center sometime around the noon hour and took up different stations in the store, with each co-conspirator assisting the others in order to distract the store personnel so Davis could successfully crawl behind the counter and steal the loose diamonds. Lastly, the defendants overlapped in their various dealings. Each participated throughout the conspiracy assuming different roles at different stages of the conspiracy.

c. *Proof of A Conspiracy Separate And Distinct From The One Charged Versus Proof Of Separate Crimes*

The evidence adduced at trial supported the commission of fraudulent use of a lost or stolen credit card by the minor co-conspirator, which was a crime or act separate, *but not unrelated*, to the conspiracy set forth in Counts III and IV of the information against Edwards and Davis. Multiple groups and performance of separate crimes or acts, however, do not rule out the possibility that an overall conspiracy exists. *United States v. Snider*, 770 F.2d 985, 989 (8th Cir. 1983) (citing *United States v. Zemek*, 634 F.2d 1159, 1167 (9th Cir. 1980), *cert denied*, 452 U.S. 905 (1981)).

This Court concluded in its discussions at ¶ IIA3b *infra.* that a single overall conspiracy existed, with participants of the conspiracy performing various functions, including the overt act or crime of fraudulently using a lost or stolen credit card, in an effort to achieve the ultimate objective of stealing loose diamonds from Cardow Diamond Center. To find that the fraudulent use of a lost or stolen credit card was a separate and distinct conspiracy from the one charged would require this Court to ignore existing law.

■ Because the evidence elicited at trial satisfied both the three prong test in *Barr* and the standards enunciated in *Blumenthal* and

84

*Reyes*, a single conspiracy was established sufficiently linking the conspiracy charged in the information with the conspiracy proven at trial. Hence, in viewing the evidence in the light most favorable to the Government, the Court concludes that no prejudicial variance was created and the evidence was sufficient to sustain a guilty verdict with respect to the conspiracy counts.

## B. MOTION FOR A NEW TRIAL

Alternatively, Edwards moves for a new trial asserting insufficient and newly discovered evidence as grounds on which he seeks relief. First, Edwards contends that certain witnesses were not credible. Second, he contends that the Government's delay and failure to turn over to the defense information of an exculpatory and/or potentially inculpatory nature, violated his constitutional right to a fair trial and the rules of discovery, and lastly, defendant contends that the Court's evidentiary rulings were erroneous, thus warranting a new trial.

### 1. *Standard For New Trial*

It is well settled that in passing on a motion for a new trial, the court's role is to weigh the evidence rather than examine its sufficiency and in doing so may weigh the credibility of witnesses. *Government of the Virgin Islands v. Commissiong*, 706 F. Supp. 1172 (D.C.V.I. 1989). If after weighing the evidence, the court determines that there has been a miscarriage of justice, the court may grant a new trial, and if trial error had a substantial influence on the verdict, the court must grant a new trial. *Commissiong, supra. See also Government of the Virgin Islands v. Smalls*, 32 V.I. 157 (Terr. Ct. St. T. & St. J. 1995). On motion for a new trial, the court may weigh the evidence and consider the credibility of the witnesses as if it were sitting as a thirteenth juror. *Government of the Virgin Islands v. Grant*, 19 V.I. 440 (Terr. Ct. St. C. 1983); *Government of the Virgin Islands v. Leycock*, 19 V.I. 59, 62 (D.C.V.I. 1982). The Court may exercise its discretion to order a new trial if it finds that the evidence preponderates heavily against the verdict; however, such exercise of discretion is to be used only in exceptional circumstances. *Leycock, supra*. If a motion for a new trial is based on newly discovered evidence, the court must decide whether there is a

reasonable probability that the result would have been different had the evidence been disclosed. *United States v. Bagley,* 473 U.S. 667 (1985). See also *U.S. v. Price,* 13 F.3d 711, 721 (3rd Cir. 1994). The mere possibility that an undisclosed item of information might have helped the defense, or might have affected the outcome of the trial is insufficient. *U.S. v. Agurs,* 427 U.S. 97, 109-10 (1976).[16]

2. *The Testimonies Of Sheila Cunningham And Micheal Pepper Were Credible*

Edward seeks to discredit the testimony of Sheila Cunningham and Micheal Pepper, the Diamond Center clerk and the store manager respectively, who offered damaging evidence against him. In doing so, Edwards makes several assertions: (1) that Pepper's testimony was doubtful since he did not remember the names of his employees; (2) that Cunningham's identification testimony was tainted or suspect because she was shown a suggestive photo array containing Edwards' photo; and (3) the testimonies of other law enforcement personnel were equally unreliable because the testimony conflicted as to the whereabouts of one of the diamonds that was evidently retrieved. With respect to each assertion, the defense counsel was given broad latitude to impeach the credibility of the witness' testimony during cross-examination. The jury weighed the evidence and apparently found that Pepper's non recollection of the names of his employees was inconsequential and that Sheila Cunningham was capable of identifying Davis and Edwards, absent any alleged suggestive photo array(s), given the length of time she spent with both defendants and the memorable events that took place on April 21, 1996.[17] Assuming *arguendo* the photo arrays were suggestive, the jury was appropriately instructed to examine with great care any

---

[16] In the absence of a specific *Brady* request, *Agurs* sets a different and stricter standard than *Bagley.* However, the Supreme Court seems now to have abandoned this distinction. It now holds in *Bagley* that the test in all cases is that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of proceedings would have been different." 3 Charles A. Wright, *Federal Practice and Procedure* § 557.2 (1982).

[17] Because the photo arrays were not shown to the witnesses until after the defendants were independently identified and arrested and considering the totality of the circumstances, the Court does not find the photo arrays to have been "unnecessarily suggestive" and

identification by a witness who was influenced by circumstances under which the identification was made. Obviously satisfied that the Government met its burden regarding the identification of the defendant(s), the jury returned guilty verdicts on both counts against Edwards.

### 3. *Government's Failure And/Or Delay In Disclosing Evidence*

As another basis for a new trial, Edwards contends that the Government violated its duty to make available to the defense certain discovery under *Fed.R.Crim.P.* 16(a)(1)(C) and (D) and that exculpatory evidence was withheld by the Government in violation of the prohibition set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Edwards argues that the results of certain medical tests performed on him were not made available and that the FBI lab analysis on the diamond wrappers was never disclosed nor was he given an opportunity to examine the wrappers and have a forensic test performed on them. He further argues that he was not advised that a witness identified him from a "suggestive" photo-array until the witness inadvertently referred to the photo array during the course of her testimony at trial.

### a. *Consequences Under Brady*

■ Unlike Rule 16,[18] the Government's duty to disclose exculpatory evidence under *Brady* is not a discovery rule, but a rule of fairness and minimal prosecutorial obligation based on the requirements of due process. *United States v. Starusko*, 729 F.2d 256, 262 (3rd Cir. 1984). Due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Brady* at 87.

In order to invoke a valid *Brady* violation, the defendant must satisfy three elements: (1) the prosecution suppressed or withheld evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material to the defense. *United States v. Perdomo*, 929 F.2d 967, 970 (3rd. Cir. 1991) (citing *Moore v. Illinois*, 408 U.S. 786, 92

---

violative of the *defendant's due process* right. *U.S. v. Emanuel*, 51 F.3d 1123, 1128 (3rd Cir. 1995).

[18] *Federal Rules of Criminal Procedure.*

S. Ct. 2562 (1972)). Evidence is not considered to be suppressed or withheld if the defendant either knew or should have known of the essential facts permitting him to take advantage of exculpatory evidence. *Perdomo* at 973.

Applying the elements set forth in *Perdomo*, Edwards failed to meet the requisite standard for establishing a Brady violation. With respect to Edwards' contention that the medical test results were not disclosed, the Court finds that the defendant knew of the medical examination because it was performed on him.[19] Because the test was performed on Edwards, the results are deemed to be property belonging to him, thereby granting him equal access to such. If Edwards received any resistance in obtaining the results, he was entitled to have this Court assist him in issuing a subpoena or subpoena *duces tecum* to acquire the same. Moreover, the Government stated, on the record during the trial, that the results were inconclusive and that the hospital did not have the examination results on file. Because the defendant, using due diligence, could have received the test results on his own, the first element of the *Perdomo* test was not met.

With respect to the nondisclosure of the test results on the diamond wrappers and the alleged absence of opportunity for the defendant to examine and perform forensic tests on the wrappers, the Court finds that the evidence can not be considered newly discovered because the defendant had knowledge of the diamond wrappers; yet, he made no specific request for the wrappers to be tested. Furthermore, the Government asserted that tests performed yielded inconclusive results because identifiable prints could not be lifted from the wrappers. Accordingly, the defendant has failed to demonstrate the materiality of the "undisclosed evidence" or the possible effects of the nondisclosure on the defense's trial preparation. *Perdomo* at 971 (citing *Government of the Virgin Islands v. Martinez*, 780 F.2d 302, 306 (3rd Cir. 1985)). Considering the totality of the circumstances and other substantial evidence offered against the defendant, the submission of the "inconclusive" test results would not have made any significant difference at trial.

---

[19] The medical tests were apparently performed on Edwards in an effort to verify whether he had swallowed any diamonds as reported.

The final contention by Edwards that the delayed disclosure of the photo array constituted a *Brady* violation is unpersuasive. The photo array was not exculpatory and was ultimately disclosed, albeit belatedly, and introduced at trial. Thus, no prejudice resulted because defendants viewed the photos during a recess and were given an opportunity to fully cross-examine the case investigator regarding the suggestive nature of the photos.

b. *Consequences Under Rule 16(a)*

The relevant sections of Rule 16 state as follows:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody, or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant. *Fed.R.Crim.P. 16(a)(1)(C)*.

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests, or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defendant's defense or are intended for use by the government. *Fed.R.Crim.P. 16(a)(1)(D)*.

Under either subsection C or D of Rule 16(a)(1), the Government has the duty to turn over information even if it is inculpatory, and the Government is required to disclose the information to the defendant regardless of whether it planned to use the information. *U.S. v. Rodriquez*, 799 F.2d 649 (11th Cir. 1986). The Government's violation of its duty under the discovery rules does not automatically entitle defendant to the relief requested.

89

Relief for violations of the discovery rules lies within the discretion of the trial court. *Id.* A showing of prejudice to the substantial rights of the defendant is required to show reversible error. *U.S. v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978). The actual prejudice will often turn on the strength of the Government's case. *Rodriquez* at 652.

With respect to the non disclosure of the medical results, the Court finds no prejudice to the substantial rights of Edwards essentially for the same reasons stated in finding no valid *Brady* violation. Similarly, the Court finds that Edwards failed to make a showing that he was prejudiced by the delayed or non disclosure of the FBI test results on the diamond wrappers. In fact, Edwards refused the Government's offer made during trial to obtain the information from the FBI. Moreover, Edwards did not request a continuance in order to receive the lab report nor did he accept the offer by the Government to stipulate to the lab results, which were "inconclusive." In the absence of a request by Edwards for a continuance, and considering Edwards' unwillingness to stipulate to the lab results, the Court must conclude that counsel for defendant did not need time to incorporate the undisclosed information into his game plan. Thus, no prejudice arose. *U.S. v. Langlois*, 15 F.3d 1161, 1178 (1st Cir. 1993).

In terms of the photo array, Edwards likewise failed to make a showing that the Government's delay in furnishing the photos caused any prejudice to any of his substantial rights. The lack of demonstrable prejudice sounds the "death knell" for a delayed discovery claim. *Id.*[20]

In addressing Edwards' remaining concern that the photo array was unnecessarily suggestive,[21] after conducting an *in camera review*, the Court found the array not to be unnecessarily suggestive and therefore allowed the photos to be admitted in evidence.

---

[20] See also *United States v. Devin*, 918 F.2d 280, 290 (1st. Cir. 1990)(explaining that a defendant complaining about delayed discovery "can not rely on wholly conclusory assertions but must bear the burden of producing, at the very least, a *prima facie* showing of a plausible strategic option which the delay foreclosed.")

[21] Because the photos of the defendants were merely taken at a closer range than the other photographs, the Court permitted the photo arrays to be admitted into evidence, permitted defense counsel to argue that the array was suggestive, and gave an identification instruction.

Assuming *arguendo* that the photo array was suggestive, it was not prejudicial because one of the individuals shown the photo array had previously identified Edwards at Emerald Beach Hotel prior to his arrest. The other individual shown the photo array was the sales clerk at Cardow who not only had ample opportunity to observe Edwards but also had sufficient cause to remember him since she waited on him the day of the larceny of the loose diamonds and Edwards forcibly pulled her head to the jewelry counter, causing her to be extremely agitated and annoyed. For these reasons the defendant's argument is without merit.

### 4. *Erroneous Rulings*

In addition to the contentions of a failure to disclose evidence, insufficiency of the evidence and discovery rule and Brady violations, the defendant Edwards requests a new trial based on trial error. With respect to any other errors, "a defendant is entitled to a fair trial but not a perfect one, for there is no perfect trial." *Government of the Virgin Islands v. Beaford*, 671 F.2d 758, 762 (3rd. Cir. 1982) (*quoting Brown v. United States*, 411 U.S. 223-331-32, 93 S. Ct. 1565, 1570, 36 L.Ed. 2nd 28 (1973) and *Lutwork v. United States*, 344 U.S. 604, 619, 73 S. Ct. 481, 490, 97 L.Ed. 593 (1953)). Because there is no reasonable probability that error in the proceedings had a substantial impact on the outcome of the trial, no new trial is required. *United States v. Fisher*, 808 F. Supp. 390, 392 (M.S. Pa. 1992) (citations omitted).

## III. CONCLUSION

In view of the foregoing, this Court concludes as follows: (1) sufficient evidence existed, when viewed in the light most favorable to the Government, to establish a single overall conspiracy to steal a wallet of loose diamonds, and therefore no prejudicial variance existed between the proof established at trial regarding conspiracy to commit grand larceny and the specific counts set forth in the information; (2) sufficient evidence existed, when viewed in the light most favorable to the Government to support a guilty verdict against Edwards for grand larceny by aiding and abetting; and (3) the jury's guilty verdicts against Edwards were rational, supported by the weight of the evidence and credibility of

witnesses and no court ruling was erroneous to the extent of affecting the outcome of the trial. Accordingly, the defendants' motions for judgment of acquittal and Edwards' motion for a new trial are DENIED.

DATED this 10th day of January, 1997.

### ORDER

This matter is before this Court on defendant's motion(s) for judgment of acquittal[22] or in the alternative, defendant Edwards' motion for a new trial. The Government opposes the motion(s).

After considering the evidence adduced at trial, together with oral argument heard after the presentation of the Government's case in chief; written Memoranda submitted by counsel, and for the reasons set forth in the memorandum Opinion of even date; it is hereby

ORDERED, that defendants' motion(s) for judgment of acquittal, in connection with conspiracy to commit grand larceny are DENIED; and it is further

ORDERED, that defendant Edwards' motion for judgment of acquittal, in connection with the grand larceny by aiding and abetting count is DENIED; and it is further

ORDERED, that defendant Edwards' motion for a new trial, in connection with his remaining counts for grand larceny by aiding and abetting is DENIED; and it is further

ORDERED, that a copy of this Order be served on the defendant Lisa Davis and Kenneth Edwards at the V.I. Bureau of Corrections and directed to counsel for the respective parties.

DATED this 10th day of January, 1997.

---

[22] The defendant Lisa Davis' motion for judgment of acquittal was only in connection with the conspiracy to commit larceny charge set forth at Count III of the superseding information dated October 11, 1996.