**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**vs.**
**MAXIMILIANO VELASQUEZ, III a/k/a "DADA"**
**JOSE RIVERA a/k/a "P.D "**
**JUAN G. VELASQUEZ a/k/a "GABBY"**
**SHARIMA SEATON a/k/a "SHARIMA CLERCENT"**
**JOSE VENTURA, Defendants**

Criminal Case Nos. SX-12-CR-063, SX-12-CR-064, SX-12-CR-065, SX-12-CR-066, SX-12-CR-076

Superior Court of the Virgin Islands

Division of St. Croix

November 5, 2013

BRADY, *Judge*

## MEMORANDUM OPINION

THIS MATTER is before the Court on "Defendant Jose Ventura's Pre-Trial Motion to Dismiss the Indictment for Pre-Indictment Delay with Supporting Brief" ("Ventura's Motion to Dismiss") filed on April 8, 2013; the People's "Response to Defendant Jose Ventura's Motion to Dismiss for Pre-Indictment Delay," filed April 24, 2013; "Defendant Jose Rivera's Motion to Dismiss Based on Undue Delay in Bringing Charges" ("Rivera's Motion to Dismiss"), filed on April 22, 2013; Defendant Maximiliano Velasquez, III's "Motion to Dismiss Information" ("Velasquez III's Motion to Dismiss"), filed April 23, 2013; Defendant Maximiliano Velasquez, III's "Motion in Limine to Dismiss Counts One, (*sic*) of the Information Herein as Multiplicitous" ("Velasquez III's Motion to Dismiss Count One"), filed April 23, 2013; and the People's "Response to Multiple Motions by Defendant Ventura and Joined by Various Defendants," filed June 5, 2013.

For the reasons that follow, Ventura's Motion to Dismiss will be denied; Rivera's Motion to Dismiss will be denied; Velasquez III's Motion to Dismiss will be denied; and Velasquez III's Motion to Dismiss Count One will be denied.

## PROCEDURAL BACKGROUND

The five above-captioned Defendants stand accused of aiding and abetting one another in the commission of first-degree murder upon a human being, namely Virgin Islands Police Corporal Wendell Williams, on or about June 14, 2001. The People filed its Superseding Information charging Defendants with two (2) Counts of First-Degree Murder on February 13, 2012, almost eleven (11) years after the alleged crime occurred. All Defendants remain detained without bail pending trial with the exception of Defendant Sharmia Clercent.

Defendants Ventura and Rivera ask the Court to dismiss the charges against them due to the considerable delay between the date the alleged criminal incident occurred and the date the People filed formal charges against them. Both Defendants argue that they are severely prejudiced by

the delay which prevents each from being able to mount a proper defense in that, among other things, each is unable to locate and examine potential exculpatory witnesses. Each further claims that dismissal is proper as the People's delay in bringing charges was intentional for the purpose of securing a tactical advantage over each Defendant, to effectively limit as the result of the significant delay the ability of each to respond to the People's one eyewitness.

In its Response to Defendant Jose Ventura's Motion to Dismiss for Pre-Indictment Delay, the People allege that during the initial police investigation after the disappearance of Corporal Williams in 2001, the Police's only tangible lead came from a single eyewitness, referred to as SOI 1. Lacking any hard evidence, Corporal Williams' disappearance and presumed death was treated as a "cold case," a status which remained until June 27-28, 2011 when the Police uncovered certain hard evidence which corroborated the statements of eyewitness SOI I .[1] According to the People, as soon as this physical evidence was uncovered, the Police initiated this case "without delay."

All parties appeared for Calendar Call on May 22, 2013 when this case was set for Jury Selection and Trial to begin on November 12, 2013. The Court subsequently received two Motions to continue the trial, one from the People filed August 22, 2013 and one from Defendant Sharmia Clercent filed August 28, 2013. The Court continued jury selection and trial to January 21, 2014 with a general admonition that further delay will not be tolerated. *See* August 20, 2013 Order.

## DISCUSSION

The right to a speedy trial is grounded in the Sixth Amendment to the United States Constitution, applicable in the United States Virgin Islands pursuant to Section 3 of the Revised Organic Act of the Virgin Islands of

---

[1] This physical evidence includes a broken blade consistent with the eyewitness's description of the saw allegedly used to dismember the victim; evidence of blood in the area where the eyewitness indicated that the victim was murdered; and indentations consistent with a bullet impact in the area referenced by the eyewitness. *See* Response to Defendant Jose Ventura's Motion to Dismiss for Pre-Indictment Delay, at 4.

1954 as amended.[2] *See Government v. Parrott*, 476 F.2d 1058, 10 V.I. 564, 568 (3d Cir. 1973). The United States Supreme Court examined lengthy pretrial delays in criminal prosecutions in light of the Sixth Amendment in *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), "establishing the analysis under which a Sixth Amendment speedy trial challenge is scrutinized" *People v. Rivera*, 54 V.I. 116 (V.I. Super, 2010).

■ However, the Sixth Amendment only applies to post-indictment delay. In addition to each Defendant's Sixth Amendment right to a speedy trial, the Fifth Amendment's Due Process Clause "always protects defendants against fundamentally unfair treatment by the government in criminal proceedings," *Doggett v. U.S.*, 505 U. S. 647, 666, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). *See also United States v. Lovasco*, 431 U. S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). "[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *U.S. v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

I. Defendants' Sixth Amendment Right to a Speedy Trial Only Applies to the Period Following Formal Charging

Different analyses apply to claims of denial of Defendants' rights to a speedy trial with respect to the passage of almost than eleven years before charges were brought (June 14, 2001 - February 13, 2012); and with respect to the delay of just shy of two years from the date of charging to trial (February 13, 2012 - January 21, 2014).[3]

■ ■ The U.S. Supreme Court has held that under the Sixth Amendment "being an 'accused' is necessary to trigger the Clause's protection" and that "the protections of the Speedy Trial Clause are

_____

[2] Revised Organic Act of the Virgin Islands 1954, as amended, § 3, 48 U.S.C. § 1561, reprinted in V.I. CODE ANN., Historical Documents,·Organic Acts, and U.S. Constitution, at 861 (1995) (preceding V.I. CODE ANN. tit. I) ("Revised Organic Act").

[3] June 14, 2001 is the date the alleged crime occurred; February 13, 2012 is the date all five Defendants were formally charged with this crime by the filing of the People's Superseding Indictment; and January 21, 2014 is the date this case is set for jury selection and trial.

triggered . . . when the indictment . . . is *unsealed*." *Doggett*, 505 U. S. at 663, citations omitted; emphasis in the original.

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *U.S. v. MacDonald*, 456 U. S. 1, 8, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982).

█ Yet, excessive pre-charging delay can warrant the dismissal of criminal charges if the defendant shows that "the pre-indictment delay in this case caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Marion*, 404 U. S. at 324.

Defendants were formally charged in this case on February 13, 2012. By settled U.S. Supreme Court case law, the Fifth Amendment, not the Sixth Amendment, applies to the People's pre-charging delay. Defendants Ventura and Rivera do not raise Sixth Amendment speedy trial arguments but focus exclusively on Fifth Amendment due process concerns stemming from the delay by the People in bringing charges against Defendants. See generally, Ventura's Motion to Dismiss; Rivera's Motion to Dismiss.

## II. Defendants' Constitutional Rights to Due Process Were Not Violated by the People's Pre-Information Delay

Both Defendant Ventura and Defendant Rivera argue that their Fifth Amendment due process rights were violated by the People's excessive pre-charging delay. According to Ventura's Motion to Dismiss, "Ventura cannot now discover exculpatory testimony and evidence which might exonerate him from these charges." *See* Ventura's Motion to Dismiss, at 9. Defendant Ventura argues that the Government has "handpicked the field of witnesses" and he is prejudiced as a result of the People's calculated delay. *Id.*

Defendant Rivera argues that "the government exacerbated the impact of its delay by intentionally depriving Mr. Rivera of warning, for

example, via an interview or subject/target letter. This prevented Mr. Rivera from marshaling and preserving other information crucial for his criminal defense." *See* Rivera's Motion to Dismiss, at 8. Defendant Rivera also claims that the People's pre-information delay was deliberate and for tactical reasons. *Id.*

We must determine whether Defendants' due process rights were violated when the People charged Defendants in 2012 with a crime, with no statute of limitations, that is alleged to have occurred in 2001. A proper analysis causes us to examine whether "[the] delay . . . caused substantial prejudice to [a defendant's] rights to a fair trial" and whether "the delay was an intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 324.

■ "Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself." *Id.*, at 321, In *Marion*, the Court found that "no actual prejudice to the conduct of the defense is alleged or proved," stating that the defendants simply offered the "possibility of prejudice inherent in any extended delay" such as how "memories will dim, witnesses become inaccessible, and evidence be lost," *Id.* at 325-326. The Court noted the fact that such a significant delay could "also weaken the Government's case." *Id.*

■ The Supreme Court, in *U.S. v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), examined pre-indictment delay and held that *Marion* "establishes only that proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." *Id.* at 789. The Court in *Lovasco* found that:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Id.* at 790, *quoting Rochin v. California*, 342 U.S. 165, 170, 72 S. Ct. 205, 96 L. Ed. 183 (1952).

The *Lovasco* Court outlined the basic test for determining whether a defendant's Fifth Amendment right to due process has been violated as a result of excessive pre-indictment delay. The essential question is whether the People's delay "violates those fundamental conceptions of justice

which lie at the base of our civil and political institutions," *Lovasco*, 431 U.S. at 790, *quoting Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791, (1935), and which define "the community's sense of fair play and decency." *Id.*, at 790, *quoting Rochin v. California, supra*, 342 U.S. at 173. Furthermore, the Court held that

> "[i]t requires no extended argument to establish that prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause." *Lovasco*, 431 U.S. at 790-791.

In fact, the *Lovasco* Court outlined the responsibilities of a prosecutor to adhere to fundamental conceptions of justice, distinguishing between unfair, tactical delay and investigative delay:

> Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed." *Smith v. United States*, 360 U.S. 1, 10, 79 S. Ct. 991, 3 L. Ed. 2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 795-796.

In this case, the first question we must answer is whether the delay "caused substantial prejudice to [a defendant's] rights to a fair trial." *Marion*, 404 U.S. at 324. This Court is guided by the standards outlined in *Lovasco* which require a defendant to demonstrate actual prejudice before "a due process claim [is] concrete and ripe for adjudication" (while noting that demonstrating actual prejudice does not make the claim automatically valid). *See Lovasco*, 431 U.S. at 789.

Defendants have failed to demonstrate any specific prejudice. Defendant Ventura speculates about what he could have uncovered using the technology available at the time. He alleges that even social media has changed so much since 2001 that it is now impossible to obtain certain

(unspecified) information from witnesses, the victim, etc.[4] Ventura's Motion to Dismiss, at 10.

Defendant Rivera merely states that, had he been made aware of the impending charges, "he might have had a chance to investigate where he was and who he was with at the time." Rivera's Motion to Dismiss, at 5. Defendants merely speculate and provide no specificity giving rise to a showing of actual prejudice. Neither Defendant has demonstrated one concrete instance where the People's pre-charging delay actually prejudiced either Defendant. Without additional proof of actual prejudice, a due process claim is not ripe for adjudication. *See Lovasco*, 431 U.S. at 789.

■ The People did not deviate from "fundamental conceptions of justice" when waiting to gather corroborating physical evidence against Defendants. After examining the facts in this case, the Court concludes that nothing in the record indicates that the People intentionally delayed (from June 14, 2001 until February 13, 2012) formally charging Defendants with first degree murder or intentionally delayed the filing of the charges in order to obtain a tactical advantage. Rather, the record indicates that the case had gone cold due to a lack of corroborating physical evidence and was only re-opened by the Police, aided by the Federal Bureau of Investigation, when certain physical evidence was discovered that corroborated the eyewitness accounts of SOI 1. *See* Response to Defendant Jose Ventura's Motion to Dismiss for Pre-Indictment Delay, at 4.

■ Many times, a prosecutor exercises sound professional judgment by waiting to prosecute a defendant until sufficient evidence exists to prove a Defendant guilty beyond a reasonable doubt. As the Court in *Lovasco* found, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 796.

Furthermore, nothing in the record indicates that the delay in prosecution was planned or executed in bad faith for the purpose of

---

[4] Defendant Ventura speculates that he "might have [had] a chance to discover the SOI's . . . social media accounts," citing MySpace, popular "just a few years ago." Yet, MySpace was not launched until 2003. See http://en.wikipedia.org/wiki/Myspace. As such, Defendant would not have been able to discover exculpatory evidence from a social media site that did not exist in 2001. All Defendants' claims of prejudice are speculative.

gaining a tactical advantage over Defendants. *See Marion*, 404 U.S. at 324. In fact, as a practical matter, the delay may substantially impede the People's ability to convince a jury, beyond a reasonable doubt, that Defendants committed a murder almost fourteen years ago. While there is the "possibility of prejudice inherent in any extended delay," the lengthy delay in this case does not deprive Defendants of their due process rights as the record does not demonstrate that the People intentionally delayed the filing of these charges in order to obtain a tactical advantage. *Marion*, 404 U.S. at 325-326.

### III. The People's Information Contains the Elements of First Degree Murder and is Proper Pursuant to FRCP 7(c)(1).

In Velasquez III's Motion to Dismiss, Defendant Velasquez, III alleges that the Superseding Information "fails to charge a viable offense under the statute" and does not "sufficiently apprise the Defendant of what he must be prepared to meet." Velasquez III's Motion to Dismiss, at 1-2, citing *Russell v. U.S.*, 369 U.S. 749, 763, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962).

[11] Federal Rule of Criminal Procedure 7(c)(1) requires only that a charging document "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure permits a defendant to seek dismissal for any "defect in the indictment" prior to trial. The United States Court of Appeals for the Third Circuit has summarized the standard for evaluating the sufficiency of a charging document as follows:

> We deem an indictment sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007), citation omitted.

Generally, a charging document will satisfy these requirements where it informs the defendant of the statute he is alleged to have violated, lists

the elements of the violation under the statute, and specifies the time period during which the violation occurred. *United States v. Urban,* 404 F.3d 754, 771 (3d Cir. 2005).

■ Title 14 V.I.C. § 922(a) states "All murder which — (1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing . . . is murder in the first degree." In *Codrington v. People,* 57 V.I. 176 (V.I. 2012), the Virgin Islands Supreme Court reiterated that "murder in the first degree that does not involve poison, lying in wait, torture, or detonation of a bomb instead requires that the People prove the defendant (1) unlawfully killed another, (2) with malice aforethought, and (3) in a willful, deliberate, and premeditated manner," 57 V.I. at 184-85, citing *Brown v. People,* 54 V.I. 496, 505 (V.I. 2011).

■ The *Codrington* Court further noted that the Statute "defines four specific methods of killing which are first degree homicide (poison, lying in wait, torture, and bombs) . . . Because the Statute lists four examples as specific ways to commit first degree murder and then states that 'any other kind of willful, deliberate and premeditated' murder is also first degree murder, a murder accomplished through one of the four enumerated methods does not require a willful, deliberate, and premeditated showing." *Id.* Citing *People v. D'Arcy,* 48 Cal. 4th 257, 106 Cal. Rptr. 3d 459, 226 P.3d 949, 975 (Cal. 2010), the Supreme Court held that "it is unnecessary in torture-murder to also find that the killing itself was willful, deliberate, and premeditated," *Id.* (internal brackets omitted).

■ Furthermore, under the theory of "aiding and abetting," guilt of an accused in a criminal case may be established without proof that he or she personally did every act constituting the offense alleged. *United States v. Walker,* 621 F.2d 163, 165 (5th Cir. 1980). The law recognizes that, ordinarily, anything a person can do for himself or herself may also be accomplished through the direction of another person, as his or her agent, or by acting in concert with, or under the direction of another person or persons in a joint effort or enterprise. *Government of the Virgin Islands v. Davis,* 35 V.I. 72 (V.I. Super. 1997)

■ In this case, the People's Superseding Information charges Defendants with aiding and abetting each other in the willful, deliberate, and premeditated murder of a human being, done with malice aforethought. These charges replicate the language in 14 V.I.C. § 922(a), informing each Defendant of what crime he or she stands accused and the

elements the People must prove beyond a reasonable doubt to secure conviction. The Superseding Information satisfies Rule 7(c)(1) because it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged."

At the charging stage, the People do not need to specify precisely how each Defendant participated in the alleged kidnapping, torture and execution of Officer Williams. The People have the ultimate burden to unbundle the series of events that it claims unfolded on or about June 14, 2001. It suffices that each Defendant is on notice that the People will attempt to prove that the Defendants aided and abetted in first degree murder as defined by the Virgin Islands Code. Therefore, People's Superseding Information contains the elements of first degree murder and is sufficient pursuant to FRCP 7(c)(1).

## IV. Count One and Count Two of the People's Superseding Information are not Multiplicitous Because They Require the People to Prove Different Statutory Elements

In Velasquez III's Motion to Dismiss Count One, Defendant Velasquez, III asserts that Counts One and Two of the People's Information are multiplicitous and violate his Fifth Amendment right to protection against double jeopardy, charging him twice for the same alleged conduct. *See* Velasquez III's Motion to Dismiss Count One, at 2.

The two Counts of the Information differ as follows: Count One charges that Defendants did "with malice aforethought, and with willful, deliberate and premeditated design kill a human being, namely Police Corporal Wendell Williams, to wit: by torturing said Police Corporal Wendell Williams and shooting him with a firearm in violation of Title 14 V.I.C. § 922(a)(1) and 11(a);" and Count Two charges that Defendants "did unlawfully kill a human being Police Corporal Wendell Williams, with malice aforethought in the perpetration of a kidnapping, to wit: by shooting said Police Corporal Wendell Williams with a firearm in violation of Title 14 V.I.C. § 922(a)(2) and 11(a)."

The People argues that the Counts are permissively different because 14 V.I.C. § 922(a)(1) classifies as first degree murder a murder that is a ". . . willful, deliberate and premeditated killing;" whereas 14 V.I.C. § 922(a)(2) classifies as first degree murder a murder that "is committed in the perpetration or attempt to perpetrate . . . kidnapping . . . ." *See*

210

People's Response to Multiple Motions by Defendant Ventura and Joined by Various Defendants, at 6-7.

According to the People, the offense charged in Count One requires a showing of premeditation whereas the offense charged in Count Two requires no showing of premeditation but instead requires the People to prove that Officer Williams was murdered during the commission of a kidnapping or attempted kidnapping. *Id.*

■■■ Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure permits a defendant to seek dismissal for any "defect in the indictment" prior to trial. In a recent case wherein a defendant appealed his conviction claiming a violation of his Fifth Amendment rights by the charging of multiplicitous counts, in his concurring opinion, Justice Swan addressed the issue:

> In addressing the multiplicitous charging for the same offense, the standard test of propriety is embodied in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The *Blockburger* test holds that if criminal charges have identical statutory elements or one is a lesser included offense of the other, subsequent prosecution is barred. Prosecution and sentencing for the same conduct under different criminal statutes is permitted if each statute requires proof of a fact which the other does not. *Connor v. People*, 2013 V.I. Supreme LEXIS 31, *47-48 (V.I. July 2, 2013), *citing Blockburger*, 284 U.S. at 304.

In *Connor*, the Court upheld the defendant's conviction of first degree robbery and possession of a deadly weapon during the commission of a crime of violence, all stemming from a single act, finding no violation of the defendant's Fifth Amendment right to be protected against double jeopardy. *See generally Connor v. People*, 2013 V.I. Supreme LEXIS 31 (V.I. 2013).

■■■ In this case, Count One and Count Two of the People's Information are not multiplicitous because they require the People to prove different statutory elements. Per 14 V.I.C. § 922(a)(1), to prove the charge alleged in Count One, the People must establish that Defendants acted with premeditation and malice aforethought. By 14 V.I.C. § 922(a)(1), the offense charged in Count Two does not require a showing of premeditation, but instead requires the People to prove that Officer Williams was murdered during the commission of a kidnapping or an

attempted kidnapping. Count Two does not charge a lesser included offense. It requires the People to prove the additional element of kidnapping. These Counts require different proof and are not multiplicitous and, accordingly, will not be dismissed at this stage.

## CONCLUSION

Despite significant delay in bringing the charges of first degree murder against Defendants, the People have not violated Defendants' constitutional rights to due process. Defendants have not shown that they suffered actual prejudice as a result of the People's pre-indictment delay. Rather, Defendants postulated generalities that may or may not actually impair their respective defenses. Additionally, Defendants have failed to show that the People's pre-charging delay violated "fundamental conceptions of justice" or intentionally delayed the filing of these charges in order to obtain a tactical advantage.

As each Defendant is on notice that the People will attempt to prove that the Defendants aided and abetted each other in committing first degree murder, the People's Superseding Information sufficiently sets forth the elements of first degree murder to satisfy FRCP 7(c)(1).

Finally, this Court finds that Count One and Count Two of the People's Information are not multiplicitous because each Count, while charging the same offense, requires the People to prove distinct elements for each Count. Count One requires the People to establish that Defendants acted with premeditation, while Count Two requires the People to prove that Officer Williams was murdered during the commission of a kidnapping or an attempted kidnapping. As such, Defendants' Fifth Amendment rights to be protected against double jeopardy are not violated.

An appropriate Order will issue simultaneously herewith,